STATE v. JOHN L. HEATH AND HOWARD A. HEATH.

(Filed 2 July, 1930.)

1. **Statutes B a—Penal statutes will be strictly construed.**

   A penal statute must be strictly construed in favor of the one charged with the offense it has created, and it will not be enlarged by construction to include offenses not clearly described, and all doubt will be resolved in favor of the defendant.

2. **Corporations D f—Agreement in this case held not to be within intent and meaning of the "Blue Sky" law.**

   The "Blue Sky" law of the State enacted for the protection of investors in preventing the promotion of "wild-cat" schemes, chapter 71(A), N. C. Code of 1927, applies where money is invested in stock, securities, profit-sharing agreements, etc., with the purpose of securing an income from the employment of the money, and a contract whereby the owner of a copyright system gives the exclusive right to another to operate the system in certain counties, and in return is to receive a percentage of the gross receipts from the operation of the system, with further provision for a division of net profits from sales or contracts written by either party, does not contemplate the placing of money in a way to secure an income from its employment, but the earning of a portion of the gross receipts in return for individual services, and the agreement is not a profit-sharing scheme or investment contract within the intent and meaning of the statute.

APPEAL by State from *Lyon, Emergency Judge,* at February Special Term, 1930, of ROBESON.

Separate bills of indictment were found against the defendants, and at the trial the two actions were consolidated and tried together. The indictments charged the defendants with unlawfully, wilfully, and feloniously offering for sale, selling, and causing to be sold to Ed. B. Freeman a certain certificate of interest in a profit-sharing agreement, or investment contract, without first registering the same in accordance with the provisions of law.

The jury returned the following special verdict:

1. On 20 January, 1928, the defendants entered into a written contract with Ed. B. Freeman, of the county of Robeson, which is attached as Exhibit "A."

2. A copy of the copyright mentioned in the contract (Exhibit "A") is hereto attached, marked Exhibit "B."

3. Ed. B. Freeman complied with the contract on his part.

4. No application was made by the defendants or either of them, pursuant to the "Capital Issues Law," Consolidated Statutes, chapter 71A, for the registration of the securities sold by the defendants to Ed. B. Freeman, and the defendants made no application for license as dealers or salesmen under the said Capital Issues Law, and no order of regis-

tration for the security was issued by the Securities Department, and no license was issued to either of the defendants as a salesman or as a dealer.

If, upon these facts, the court be of the opinion that the defendants, or either of them, are guilty, the jury so finds; otherwise, not guilty.

The court expressed the opinion that upon the facts thus found the defendants should be acquitted, and the jury returned a verdict of not guilty.

Exhibit A is a contract between John L. Heath, J. Cecil Heath, J. Talton Heath, and Howard A. Heath, partners doing business under the name of Heath Brothers Realty Transfer System of Guilford County, and Ed. B. Freeman, of Robeson County.

The partners have a copyright on their system for the first term of twenty-eight years from 8 May, 1924, and contracted that Freeman should have the exclusive use of their system in the counties of Robeson, Columbus, Bladen, Hoke, and Scotland, in consideration of $3,500, to be paid in installments.

The remainder of the contract follows, the partners being the parties of the first part, and Ed. B. Freeman the party of the second part:

"It is further agreed that the party of the second part shall work or cause to be worked in the counties mentioned above the Heath Brothers Realty Transfer System and to receive 80 per cent of the gross receipts charged for this service whether collected through listing fees. or one per cent commission, and Heath Brothers Realty Transfer System to receive the remaining 20 per cent to be paid to the parties of the first part monthly.

It is further agreed that the party of the second part will pay all expenses incurred by the operation of the above system, except 20 per cent of advertising incurred for advertising said system, which will be paid by the party of the first part.

It is further agreed that Heath Brothers Realty Transfer System will assist the party of the second part in getting the above named business organized and put in working condition.

It is further agreed that the party of the second part will mail to all real estate dealers a copy of descriptions of all lands listed in the counties mentioned above by the party of the second part, together with a copy of same to the home office of the parties of the first part at Greensboro, N. C.

It is further agreed that the duration of this contract shall be for the remaining period of the copyright under which the parties of the first part are operating, and that the party of the second part or his heirs or assigns shall have the privilege of renewing said contract under the same conditions as this contract is made.

It is further agreed that the party of the second part or his assigns shall have the right to sell or dispose of this contract or any part thereof subject to the approval of the parties of the first part.

Parties of the first part agree to pay to the party of the second part 50 per cent of all net profits that may be obtained from auction sales conducted or contracts written or caused to be written by either of the parties above mentioned in the above-mentioned counties."

*Attorney-General Brummitt, Assistant Attorney-General Nash and I. M. Bailey for the State.*

*Norma Janet Winburn for defendants.*

ADAMS, J.   The defendants were indicted for selling to Ed. B. Freeman "a certain certificate of interest in a profit-sharing agreement, or investment contract, without first having registered the same in accord with the provisions of law."   The law regulating the sale of securities is contained in chapter 149 of the Public Laws of 1927, and in chapter 71A of the North Carolina Code of 1927.

One of the penal subsections is as follows: "Whoever shall sell or cause to be sold, or offer to sell or cause to be offered for sale, any security in this State, which is not exempt under any of the provisions of section 3 (Michie's Code, 3924(1), unless sold in any transaction exempt under any of the provisions of section 4 (Michie's Code, 3924(m), and which such securities so sold or caused to be sold or so offered for sale or caused to be offered for sale, shall not have been registered as provided in this act, shall be guilty of a violation of the act, and upon conviction thereof shall be imprisoned in the State prison for a period of not less than one, nor more than five years, or fined in any sum not more than one thousand dollars ($1,000), or both."   Laws 1927, ch. 149, sec. 23(b); Michie's Code, sec. 3924(ff) (b).

"Security" is defined in section 2 (Michie's Code, 3924(k)(c): "The term 'securities' or 'security' shall include any note, stock certificate, stock, treasury stock, bond, debenture, evidence of indebtedness, transferable certificate or interest or participation, certificate of interest in a profit-sharing agreement, certificate of interest in any oil, gas or mining lease, collateral trust certificate, any transferable share, investment contract, or beneficial interest in or title to property or profits or any other investment commonly known as security."

In section 9 (Michie's Code, 3924(r) it is provided that "all securities required by this act to be registered before being sold in this State, and not entitled to registration by notification, shall be registered only by qualification in the manner provided by this section."

The term "sale" includes any agreement whereby a person transfers or agrees to transfer either the ownership of or an interest in a security. "Sale" or "sell" includes also an attempt to sell, an option of purchase or sale, a subscription, or an offer to sell either directly or by an agent, or by a circular letter, advertisement, or otherwise." Section 2(d); Michie's Code, 3924(k)(d).

It is to be noted that although the statute gives the word "security" a comprehensive definition, the indictment directs our inquiry to the question whether the paper executed by the parties is an "investment contract," or a "certificate of interest in a profit-sharing agreement." There is no contention that the paper referred to was registered or that it is within any of the exempted classes.

If a person shall sell any security "embraced and referred to" in the act without having it registered as therein provided, he shall be deemed guilty of a felony. The statute containing this provision is penal. That penal statutes must be construed strictly is a fundamental rule. The forbidden act must come clearly within the prohibition of the statute, for the scope of a penal statute will not ordinarily be enlarged by construction to take in offenses not clearly described; and any doubt on this point will be resolved in favor of the defendant. S. v. Kearney, 8 N. C., 53; Smithwick v. Williams, 30 N. C., 268; Hines v. R. R., 95 N. C., 434; Cox v. R. R., 148 N. C., 459.

"Blue Sky" laws have been upheld by the appellate court of this and other States and by the Supreme Court of the United States. S. v. Agey, 171 N. C., 831; B. & L. Asso. v. Coffman, 162 S. W. (Ark.), 1090; Ex parte Taylor, 66 So. (Fla.), 292; Hall v. Geiger-Jones Co., 242 U. S., 539, 61 Law Ed., 480; Caldwell v. Sioux Falls Stock Yards Co., 242 U. S., 559, 61 Law Ed., 493; Merrick v. Halsey & Co., 242 U. S., 568, 61 Law Ed., 498.

The validity of the statute granted, the defendants cannot be convicted unless their conduct involved a breach of the letter and spirit of the law. The purpose of the law as pointed out in Hall v. Geiger-Jones Company, supra, is "to protect the public against the imposition of unsubstantial schemes and the securities based upon them." One of the securities mentioned in the indictment is an "investment contract." The term is not defined in the act, but it implies the apprehension of an investment as well as of a contract. The word "investment" has no technical definition and its meaning in particular cases is often determined by its relation to the context. It has been variously defined as the conversion of money into property from which a profit is to be derived in the ordinary course of trade or business; an expenditure for profits; the placing of capital to secure an income from its use. We have found comparatively few cases in which the meaning of "investment contract" has been given. In S. v. Gopher Tire and Rubber Co., 177 N. W. (Minn.), 937, the

Supreme Court of Minnesota in analyzing a statute denouncing "investment contracts" said: "The placing of capital or laying out of money in a way intended to secure income or profit from its employment is an investment as that word is commonly used and understood; and that if the defendants sold its certificates to purchasers who paid their money justly expecting to receive an income or profit from the investment, it would seem that the statute should apply." The certificate set out in that case recited this provision: "That defendant will annually set aside as a bonus to certificate holders all of its excess earnings after paying operating expenses, fixed charges, and dividends to stockholders, the same to be distributed at its option in the form of preferred stock."

The definition of "investment contract" in the case just cited, was adhered to in *S. v. Evans,* 191 N. W. (Minn.), 425, in which the contract gave to the purchaser an option to surrender his contract and take back the money he had paid, with a bonus of $70 for each $1,000, from the profits obtained on the sale of contracts. It was adhered to in *S. v. Ogden,* 191 N. W., 916, in which the "unit holders" were to participate in profits in proportion to their holdings, and in *S. v. Bushard,* 205 N. W., 370, the defendant was to participate in profits as the result of his investment and eventually to receive certificates of corporate stock.

In *S. v. Agey,* 171 N. C., 831, decided in 1916, the Court construed the statute then in effect. There the defendant was the agent of a Tennessee corporation engaged in selling tracts of land in Georgia for fig orchards. The purchaser paid in installments and the company reserved title, promising to convey to the purchaser when the last payment was made. The company was to cultivate, prune, and take care of the orchard for five years. The purchaser took no part in it. It was held that the corporation was an "investment" company, that the defendant was offering for sale the "obligation of a foreign corporation," and "evidences of property" in violation of the law as it then existed. In other cases the question before the Court was the fraudulent sale of stocks or bonds. *Bank v. Felton,* 188 N. C., 384; *S. v. Deposit Co.,* 191 N. C., 643; *Hotel Corporation v. Bell,* 192 N. C., 621.

The distinguishing features of the contract in question are apparent. Freeman was to get his income from the gross amount received for his individual service in working the transfer system in those counties in which he was to have the benefit of its exclusive use. The fact that he was to retain only a percentage of the gross receipts does not affect the nature or quality of the service. This applies also to the provision that the company should pay Freeman one-half of the net profits derived from auction sales or contracts written by either of the parties. The contract does not contemplate the placing of Freeman's money with the partners in a way intended to secure an income from its employment by them in the conduct of the business.

The result is obvious. In our opinion the contract included in the special verdict is not an "investment contract" within the terms of the statute upon which the indictment is drafted. And by the same reasoning we are led to the conclusion that the contract is not a "certificate of interest in a profit-sharing agreement."

The evils which the Legislature intended to denounce are speculative schemes which have no basis. It was deemed necessary to supervise the efforts of organizers and promoters who offer to sell stocks, bonds, and other securities in person or by agents; and to save investors from laying out their money in securities upon the promise and just expectation that the investment would return a profit without any active effort on the part of the investors. *S. v. Agey, supra; Bank v. Felton, supra; S. v. Deposit Co., supra; Hotel Co. v. Bell, supra; Lewis v. Creasy Corporation,* 248 N. W., 1046; *Creasy Corporation v. Enz. Bros. Co.,* 187 N. W., 666. It appears from the contract under consideration that the anticipated profits were dependent chiefly upon the efforts of Freeman, and this, as indicated above, is its distinguishing characteristic.

Whether a part interest in a copyright is subject to sale for the exclusive use of the purchaser we need not decide.

No error.