STATE OF MAINE *vs.* RAYMOND F. CUSHING.

Aroostook.     Opinion, October 14, 1940.

*Parker P. Burleigh,* County Attorney for the State.
*James M. Gillin,* for respondent.

SITTING: BARNES, C. J., STURGIS, THAXTER, HUDSON, MANSER, WORSTER, JJ.

HUDSON, J.   Indicted by the grand jury of Aroostook County for violation of Sec. 162 of Chap. 57 of R. S. 1930, the respondent

filed a special demurrer including a general demurrer, to the overruling of which he excepted.

By the indictment the State sought to charge the respondent with selling without registration as a dealer securities as defined in Sec. 165 of said chapter as amended by Chap. 240, P. L. 1933. The amendment by Chap. 117, P. L. 1939 postdates the alleged commission of the offense.

Boiled down, it is charged that the respondent on September 18, 1937, being a dealer within the provisions of the statute, sold to Elmer G. Norbeck and Walter L. Norbeck for $2,000 cash "a document of title to or certificate of interest in" certain real estate in Calais: viz., burial lots. Then follows a copy of the indenture of sale claimed by the State to constitute the document of title or certificate of interest. It is dated November 18, 1937, and is signed "Hillcrest Memorial Park by Raymond F. Cushing, Its President."

It is also alleged that the demised lots were located only on an unrecorded map of Hillcrest Memorial Park, which map was then in the possession of the respondent; that the sale and purchase of this document of title or certificate of interest were accompanied by and connected with a certain agreement in writing (other than a policy of title insurance) promising financial gain to the Norbecks. Then is set forth a copy of the agreement dated "18 day of Sept. A.D. 193 ," which purports to be between Grand View Corporation and the Norbecks, but was signed only by Grand View Corporation by Raymond Cushing, President. By it the Norbecks agreed to purchase eight lots, namely: 41 to 48 inclusive, each lot containing four units, located in Section A in Hillcrest Memorial Park in Calais, and to pay $2,000 for the same. The agreement did not state whether this amount was to be paid cash down or not, but did provide that "after payment has been made in full as aforesaid, GRAND VIEW agrees to cause to be conveyed to the PURCHASER from HILLCREST MEMORIAL PARK, the said lots hereinabove described. . . ." In the indenture, bearing date of November 18, 1937, set forth in full in the indictment, the receipt of the consideration was acknowledged.

These words appear in the agreement: "Lots to be resold within thirty months at not less than $125 $\frac{00}{xx}$ Per unit of four Graves."

Then the indictment alleges that the respondent, although a

dealer under the law, was not registered, and that the securities that the respondent was engaged in selling were documents of title to or certificates of interest in real estate. Then follow denials that the respondent came within certain exceptions in the statute.

At the outset the respondent claims that the indictment does not set forth a *document of title to* or *certificate of interest in* real estate within the meaning of the statute. He argues "that no document could be considered one such unless it actually either conveyed or affected title to real estate, or was a certificate of an actual interest in real estate." He insists that if a grantor has no title the document is not one of title and that this indictment is insufficient in that it does not "plainly indicate and show" that the document did "convey or affect some actual title to, or constitute and create some actual interest in real estate."

We do not so interpret the statute. It does not say "valid" documents of title to or "valid" certificates of interest in real estate or documents of "valid" title to or certificates of "valid" interests in real estate. True, language of the statute refers to title and to interest but it pertains as well to bad as to good title or interest.

Here it should be stated that the respondent does not claim that the demise of these burial lots did not concern *real estate.*

> "The lot owner's title to the lot is a legal estate, and his interest is a property right entitled to protection from invasion, but only in a restricted sense does it constitute an interest in real property." 14 C. J. S., Sec. 25, on page 85. Also see *Gowen* v. *Bessey*, 94 Me., 114, 116 and 10 Am. Jur., Sec. 22, pages 503-505.

It has been said that such legislation is called "Blue Sky Laws" because it tends to "stop the sale of stock that represents nothing but blue sky — nothing terrestrial or tangible" (37 C. J. ,page 270, footnote 39) ; that it pertains to "speculative schemes which have no more basis than so many feet of blue sky" (*Idem*) ; and that its violators "became so barefaced that it was stated that they would sell building lots in the blue sky in fee simple." (*Idem*).

Considering the purpose of the Blue Sky Law to protect the public against fraud, deception, and imposition by purchases from unregistered dealers, it would seem it could at least in part accomplish

that purpose by prohibiting the sale by an unregistered dealer of a document or certificate purporting to convey title when actually the seller has no title. The legislature no doubt realized that it would be as fraudulent to sell a worthless indenture as a worthless stock and that there was as much need to require the registration of a dealer in the one case as in the other. What the dealer sells is not the actual title but the document or certificate; another is the grantor. The gist of the charge against this respondent is that without registration as a dealer he sold this document of title to or certificate of interest in real estate, not that he, as owner of the fee, sold real estate. Title is not a material issue.

Next the respondent complains that the indenture is not a document of title to or certificate affecting real estate because the description of the real estate therein is insufficient to convey. While we think it is sufficient (see *Proprietors of Kennebec Purchase* v. *Tiffany*, 1 Me., 219; *Palmer* v. *Dougherty*, 33 Me., 502, 506; *Talbot* v. *Copeland*, 38 Me., 333, 341; *Chesley* v. *Holmes*, 40 Me., 536, 546; and *Bradstreet* v. *Winter*, 119 Me., 30, 38, 109 A., 482), yet, even if it were not, for the reason previously given that it need not be a valid indenture, we hold it would be a document of title or certificate of interest within the meaning of this statute.

To constitute an offense under this statute, the sale of such a document or certificate by an unregistered dealer must be accompanied by or connected in some manner with a "contract, agreement or conditions, (other than a policy of title insurance issued by a company authorized to do a title insurance business in the state of Maine,) under the terms of which the purchaser is insured, guaranteed or agreed to be protected against financial loss or is promised financial gain." The respondent contends that the indictment does not set forth any such accompanying contract agreement or conditions promising financial gain. We think otherwise. The indenture of November 18, 1937 was in pursuance of the agreement of September 18th theretofore and in that agreement it was stated: "Lots to be resold within thirty months at not less than $125$\frac{00}{xx}$ Per unit of four Graves." From this agreement and consummating indenture, both of which are set forth in full in the indictment, it appears that the purchasers paid $2,000.00 for eight lots which contained thirty-two units, four units in each lot. So for each unit the

cost to them was $62.50. Upon a resale for not less than $125.00 per unit, no matter how many graves there might have been in each unit, they would receive $4,000.00, or 100% on their investment. Thus it seems perfectly clear that there is set forth in the indictment a promise of financial gain which did accompany the sale of these lots.

The respondent claims, however, that the language referred to is "ambiguous in that it fails clearly to indicate which of the parties named in the document was thereby to be obligated. It might have been the undertaking of either." Taking into consideration the whole context, we fail to discover such ambiguity.

This agreement is attacked by the demurrer for another reason, namely: that while purporting to be bilateral, it was signed only by the seller, the Grand View Corporation by its president, and that this fact makes the agreement void. This contention cannot be upheld. The agreement was fully executed on the part of the purchasers, and the seller having received payment, it would not lie in its mouth to say that the contract was invalid for lack of the purchasers' signatures.

> ". . . any writing signed by one party and orally assented to by the other binds both, except so far as the Statute of Frauds provides the contrary. Indeed any written contract though signed by one party only, binds the other if he accepts the writing." Vol. 1, Williston on Contracts, page 157, Sec. 90a. Also see *Portland Terminal Co.* and *Maine Central Railroad Co.* v. *Boston and Maine Railroad*, 127 Me., 428, 435 *et seq.*; *Inhabitants of South Berwick, Petitioners*, v. *County Commissioners*, 98 Me., 108, 111, 112.

It was not essential that the indictment contain allegations that the granting corporation owned and had the right to convey the property it sold, or that Mr. Cushing was its president and had authority to execute the document for and on behalf of the corporation, for as already stated, the validity of the title was not in issue. Nonessential elements need not be alleged. *State* v. *Gilman*, 96 Me., 431, 52 A., 920.

Another ground of demurrer was that the indictment is duplicitous in alleging that the respondent sold a certain security, to wit: "a document of title to *or* certificate of interest in, certain real es-

tate" (italics ours). The alternative being descriptive of only one thing and there being no contradictory terms and one offense only being alleged, the allegation is not duplicitous. *State* v. *Willis*, 78 Me., 70, 72, 73, 2 A., 848.

Another ground was that the indictment fails to allege that the respondent, as a dealer in securities as defined in said statute, did by direct solicitation sell to the Norbecks any security on November 18, 1937, the date of the asserted document of title to or certificate of interest in real estate. The indictment did allege such a sale as of September 18, 1937, and being a specific date within the Statute of Limitations, time not otherwise being material, the allegation is sufficient.

Still another ground was that the indictment is duplicitous and uncertain in that it describes the real estate as being "shown on the map of said Hillcrest Memorial Park in the possession of" said Hillcrest Memorial Park, alleged in the indictment to be a corporation, and also as "being located only on an unrecorded map of said Hillcrest Memorial Park, which map was then in the possession of the respondent." It is noted, however, that the indenture, that is, the document of title, purports to have been signed by the grantor's president and hence the allegation that the map was in the possession of the corporation and of its president is neither duplicitous nor uncertain.

All of the many grounds of demurrer, both as to form and substance, have been carefully considered and in none of them do we find merit. The ruling below must be sustained.

*Exceptions overruled.*
*Respondent to stand trial.*

(BARNES, C. J., having retired, did not join in this opinion.)