Rachel A. McKENNA

v.

**PEDDLE LAND DEVELOPMENTS.**

Supreme Judicial Court of Maine.

May 11, 1967.

---

Richard B. Sanborn, Augusta, for plaintiff.

Robert Martin, Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, RUDMAN and DUFRESNE, JJ.

TAPLEY, Justice.

On appeal. The action was heard by a single Justice and it is from an appeal from his decision that it is before us. The plaintiff, Rachel A. McKenna, was the owner of certain real estate located in Hallowell, Maine, comprised of a substantial acreage of undeveloped land. The defendant, Peddle Land Developments, is a corporation engaged, among other purposes, in owning, improving and developing real estate. On September 12, 1964 the plaintiff deeded the undeveloped property to the defendant corporation. On the same date the parties executed a written agreement concerning the property. The defendant corporation on October 28, 1964 executed a mortgage to the plaintiff with the real estate as security, securing to the plaintiff the sum of ten thousand dollars ($10,000.00), payable in accordance with the terms of a contract between the parties bearing even date with that of the deed.

The plaintiff in her complaint alleges (1) that the defendant, by false and misleading information upon which she relied, induced her to sign the deed and the agreement; (2) that the defendant purported to act as a real estate broker for the plaintiff without having been licensed as a real estate broker; and (3) that the agreement and the entire transaction is illegal, void and invalid as the defendant was in violation of 32 M.R.S.A., Chap. 13, being the so-called Blue-Sky Law.

Plaintiff seeks declaration that agreement and deed is illegal, invalid and of no effect and further requests the court to remove the cloud upon the title to plaintiff's property. The presiding Justice found no deception or fraudulent action on the part of the defendant in the negotiations which culminated in the conveyance by the plaintiff to the defendant, the mortgage back from defendant to plaintiff, and the development plan expressed in the contract between the parties. He further found that the statutory provisions relative to real estate brokers and dealers in securities are not relevant to the instant proceedings. The "clearly erroneous" rule is applied to the findings of the Justice. (M.R.C.P., Rule 52).

The plaintiff contends that the written instruments which the plaintiff executed were the result of fraud practiced upon the plaintiff by the defendant and, therefore, these instruments evidencing contractual relationship between the parties are of no legal effect and should be declared null and void. The plaintiff has alleged fraud. Fraud is never presumed. It must be proved. Mallett v. Hall, 129 Me. 148, 150 A. 531; Wood et al. v. LeGoff, 152 Me. 19, 121 A.2d 468.

"As a general thing, a court of equity may not assume power to administer justice because of the hardship of a case or the failure of the party's remedy at law. Nor does equity relieve parties from bargains merely because they are hard, harsh, unwise, improvident, oppressive, or unprofitable, or because anticipated profits have not been derived therefrom. Thus, mere loss in a bargain, resulting not from fraud or the failure of a warranty, but from bad calculation or the want of vigilance, is not a ground for relief in equity." 27 Am.Jur.2d, Equity, Sec. 25.

The record discloses that the first contact made with the plaintiff which finally resulted in the transaction which is now before us was in 1960. Between 1960 and

September, 1964 when the deal was finally consummated Mr. Peddle, sole owner of the defendant corporation, and Mr. Mc-Mackin, who was instrumental in bringing Mr. Peddle and the plaintiff together, conferred and negotiated with the plaintiff many times. Sale price of the property, plans for its development and many other details and terms of proposed contractual relationship were debated and discussed. There is testimony in the record which could be accepted and believed by the presiding Justice that Mr. McMackin spent a substantial amount of time in going over with the plaintiff the form of the proposed deed, the various and sundry conditions contained in the agreement and the terms of the mortgage; that after such described procedure the documents were put in final form and executed by the plaintiff.

The testimony demonstrates that Mrs. McKenna, the plaintiff, is of competent mental capacity and an intelligent person. She is employed by the Internal Revenue Department in Augusta. It cannot be said under the circumstances as shown by the testimony that Mrs. McKenna would be easy prey for one who attempted to perpetrate a fraud upon her and thus illegally deprive her of her property rights.

██ There was introduced into evidence by the plaintiff an advertisement in the Industrial Edition of the Daily Kennebec Journal as of Saturday, February 27, 1965 that the Peddle Construction Corporation offered its expert services in the field of engineering and construction to the general public. The advertisement also speaks of its land development capabilities. Another plaintiff's exhibit being a publication in the April 9th, 1965 issue of the Daily Kennebec Journal contains a news story headlined, "Multi-Million Dollar Land Development for Hallowell." The body of the article concerns itself with the project located on the Rachel McKenna property describing in glowing and optimistic language the prospects of a million dollar development on the area. These newspaper publications were published for public consumption months after the execution of the documents in this case and, therefore, have no relevant bearing on the question of alleged fraud and misrepresentation.

██ We find no evidence of fraud or misrepresentation on the part of the defendant.

The Justice below found that the statutory provisions relative to real estate brokers and dealers in securities were not relevant to the facts in the case. Counsel for the plaintiff attacks this findings by saying that the evidence discloses a violation of both statutes and, therefore, the deed and agreement should be rescinded.

The pertinent portions of the statute involved are:

(Dealers in Securities)

"As used in this chapter the term 'dealer' shall mean any individual, partnership, association or corporation engaging in the business of selling or offering for sale securities, except to, or through the medium of, or as agent or salesman of, a registered dealer; but sales made by, or in behalf of, a vendor in the ordinary course of bona fide personal investment, or change of investment, shall not constitute such vendor, or the agent of such vendor, if not otherwise engaged either permanently or temporarily in selling securities, a dealer in securities.

"The term 'securities' shall include all stocks, bonds, debentures or certificates of participation, all ship shares, all documents of title and certificates of interest in any profit-sharing agreement, or in any oil, gas or mining lease, royalty, right or interest, or in the title to or any profits or earnings from land or other property situated outside of Maine, and all other forms of securities, except that it shall not be held to include commercial paper or other evidence of debt running not more than 9 months, or notes secured by mortgage of real estate in this State, or

the shares of loan and building associations organized under the laws of this State. The term 'securities' shall include documents of title to and certificates of interest in real estate, including cemetery lots, and personal estate when the sale and purchase thereof is accompanied by or connected in any manner with any contract, agreement or conditions, other than a policy of title insurance issued by a company authorized to do a title insurance business in this State, under the terms of which the purchaser is insured, guaranteed or agreed to be protected against financial loss, or is promised financial gain." 32 M.R.S.A., Sec. 751.

(Real Estate Brokers and Salesmen)

"2. *Real estate broker.* A 'real estate broker' is any person, firm, partnership, association or corporation who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, or rents or offers for rent or lists or offers to list for sale, lease or rent, any real estate or the improvements thereon for others, as a whole or partial vocation.

\* \* \* \* \* \*

"This chapter shall not apply to any person, partnership, association or corporation who as owner or lessor shall perform any of such acts with reference to property owned or leased by said owner or lessor or to the regular employees thereof with respect to the property so owned or leased, where such acts are performed in the regular course of, or as an incident to the management of such property and the investment therein, \* \* \*." 32 M.R.S.A., Sec. 4001.

Some of the purposes of the defendant corporation are:

"The purposes of said corporation are to undertake, do, engage in, transact and carry on any and all kinds of manufacturing, mechanical, mercantile, trading, contracting, commercial, building, agricultural, logging, lumbering, mining, quarrying, and real estate business, to sell, improve, manage, develop, lease, mortgage, dispose of, or otherwise turn to account or deal with all or any part of the property of the company and to develop land for commercial purposes, for residential purposes, for shopping centers and other associated developments and for other purposes.

"To acquire by purchase or otherwise, own, hold, buy, sell, convey, lease, mortgage or incumber real estate or other property, personal or mixed."

■ The corporation had full power and authority to purchase real estate, to mortgage it and to convey to those who desired to purchase it. Legally the corporation was the owner of the property, the fee vesting in it. The proceeds of sale were to be disposed of in accordance with the separate agreement executed between the parties.

"Generally, a 'real estate broker' is one who negotiates the sale of real property and whose business is that of finding a purchaser who is willing to buy on terms fixed by owner." Vol. 36 Words and Phrases, page 277.

"This chapter (Real Estate Brokers and Salesmen) shall not apply to any person, partnership, association or corporation who as *owner* or lessor shall perform any of such acts with reference to property *owned* or leased by said *owner* or lessor \* \* \* where such acts are performed in the regular course of, or as an incident to the management of such property and the investment therein \* \* \*." Sec. 4001, supra. (emphasis supplied).

We hold that there was not a real estate brokerage relationship between the parties.

The plaintiff takes the position that the agreement of September 12, 1964, executed

on the same date as that of the deed, is a certificate of interest in a profit-sharing agreement, being a security within the intent of Sec. 751 and, therefore, there was a violation of the section because the defendant was not licensed.

In State v. Cushing, 137 Me. 112, 15 A.2d 740, the defendant was charged with selling a document of title to or certificate of interest in certain real estate, viz: burial lots. Cushing sold some burial lots for $2000. An agreement as a part of the sale provided, "Lots to be resold within thirty months at not less than $125.00 Per unit of four Graves." Upon a resale the purchasers of the lots would receive $4000., being 100% on their investment. The court held the indictment charged a crime, as under the circumstances the agreement to resell the lots for twice the amount paid, was a document of title to or a certificate of interest in real estate, the sale of which is prohibited by statute unless the dealer is licensed. The following pertinent language appears on pages 115, 116, 15 A.2d on pages 742, 743:

"It has been said that such legislation is called 'Blue Sky Laws' because it tends to 'stop the sale of stock that represents nothing but blue sky—nothing terrestrial or tangible' (37 C.J., page 270, footnote 39); that it pertains to 'speculative schemes which have no more basis than so many feet of blue sky' (Id.); and that its violators 'became so barefaced that it was stated that they would sell building lots in the blue sky in fee simple.' (Id.).

"Considering the purpose of the Blue Sky Law to protect the public against fraud, deception, and imposition by purchases from unregistered dealers, it would seem it could at least in part accomplish that purpose by prohibiting the sale by an unregistered dealer of a document or certificate purporting to convey title when actually the seller has no title. The legislature no doubt realized that it would be as fraudlent to sell a worthless

indenture as a worthless stock and that there was as much need to require the registration of a dealer in the one case as in the other. What the dealer sells is not the actual title but the document or certificate; another is the grantor. The gist of the charge against this respondent is that without registration as a dealer he sold this document of title to or certificate of interest in real estate, not that he, as owner of the fee, sold real estate. Title is not a material issue."

Just what did pass between the plaintiff and defendant in the nature of documents? First, there was a warranty deed conveying the real estate to Peddle Land Developments, a corporation. This deed was dated September 12, 1964. On the same date there was an agreement executed by the parties concerning the property conveyed. Later, on October 28, 1964, Peddle Land Developments executed a mortgage to the plaintiff for $10,000. The agreement contains provisions regarding the mortgage; extension of the agreement; its termination by act of either party; that Peddle Land Developments shall promote the sale or lease of the premises to the mutual benefit of both parties; that Peddle Land Developments shall determine sale price of the value of the lots to be sold with a stated minimum; that the covenants and conditions contained in the agreement are to be considered in the nature of a trust in the event Mrs. McKenna is prejudiced by legal action brought against Peddle Land Developments.

It further provides that proceeds of sales or leases be placed in a special escrow account and disbursements made in accordance with provisions of the agreement. A division of the profits shall be made equally between the parties. The language of the agreement is clear and understandable. It contains no guarantee of profits to either party.

The statute applies to "any individual, partnership, association or corporation engaging in the business of *selling or offering for sale* securities * * *." (emphasis

supplied). The requirement of registration contemplates a sale. In the case of State v. Heath et al., 199 N.C. 135, 153 S.E. 855, on page 858, 87 A.L.R. 37 involving an investment contract under a security statute the court said:

"The evils which the Legislature intended to denounce are speculative schemes which have no basis. It was deemed necessary to supervise the efforts of organizers and promoters who offer to sell stocks, bonds, and other securities in person or by agents; and to save investors from laying out their money in securities upon the promise and just expectation that the investment would return a profit without any active effort on the part of the investors."

Sec. 751 in part prohibits the sale or offering for sale without a license securities in the form of "certificates of interest in any profit-sharing agreement" or certificates of interest in real estate * * *.

In security acts, "The terms 'sale,' 'sell,' 'offer to sell,' 'offer for sale,' and 'offer' are * * * broadly defined to include ingenious methods employed to obtain money from members of the public to finance ventures." Securities and Exchange Commission v. Addison, D.C., 194 F.Supp. 709, 722. The defendant in the instant case who was admittedly not licensed under Sec. 751, in order to violate the section, would have to *sell* to the plaintiff a certificate of interest in a profit-sharing agreement or a certificate of interest in real estate accompanied by or connected with a contract, agreement or conditions under the terms of which the plaintiff was promised financial gain.

In the instant case the sale was not from Peddle Land Developments to Mrs. McKenna but from Mrs. McKenna to Peddle Land Developments. It was the transfer of title to real estate by deed. The agreement was not a certificate of interest in any profit-sharing agreement or a certificate of interest in real estate within the meaning of the terms as used in the statute. The agreement was based upon the deed setting out the respective legal responsibilities and benefits between the parties affecting the disposal of the real estate conveyed by the deed. The agreement as we have previously stated was not procured by fraud or misrepresentation. A mortgage given by Peddle Land Developments to Mrs. McKenna constituted a part of the contractual relationship between the parties. We hold that this transaction, in whole or in part, does not come within the provisions of Sec. 751.

We find no error in the findings of the single Justice.

Appeal denied.

MARDEN, J., did not sit.