STATE OF NORTH CAROLINA v. EUGENE THOMAS

No. 10

(Filed 7 March 1977)

1. Safecracking— necessity for use of explosives, drills or tools

   Strictly and grammatically construed, G.S. 14-89.1 prohibits the unlawful and forcible opening, attempt to open, or picking of a safe or vault by the use of "explosives, drills, or tools." Thus, each method of opening a safe must be by means of "explosives, drills or tools" in order to fall within the prohibition of the statute.

2. Safecracking— picking combination of safe — no use of tools — insufficiency of evidence of safecracking

   The evidence was insufficient to show that defendant "picked the combination" of a safe within the meaning of the safecracking statute, G.S. 14-89.1, where it tended to show that defendant merely opened the doors to an essentially unlocked safe by turning the combination dial a half turn back to zero, and there was no evidence that defendant used or attempted to use "explosives, drills, or tools" or otherwise forced open the safe.

APPEAL by the State of North Carolina pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals reported in 31 N.C. App. 52, 228 S.E. 2d 468 (1976)..

Defendant was tried upon a bill of indictment which charged that on or about the 23rd day of September 1975 he "unlawfully and wilfully did feloniously pick the combination of a safe of Scarborough Hardware Company, a corporation, used for storing chattels, money and other valuables." This indictment was drawn under G.S. 14-89.1 which provides, "Any person who shall, by the use of explosives, drills, or tools, unlawfully force open or attempt to force open or 'pick' the combination of a safe or vault used for storing money or other valuables, shall, upon conviction thereof, receive a sentence, in the discretion of the trial judge, of not less than two years nor more than 30 years' imprisonment in the State penitentiary."

The second bill of indictment charged defendant with felonious larceny.

The evidence for the State tended to show the following facts: In September 1975 Landon Scarborough owned and operated a hardware store in Wadesboro. Money and valuables were customarily kept in a safe in the office, located in the rear of the store. On the date in question, the contents of the safe

included a deposit book containing a $50 check, two $30 money orders, and $200.00 in cash, consisting of ten $20 bills. Six metal cash boxes, each holding $100.00 in various denominations, were also in the safe.

The safe had double exterior doors and a combination lock. Once the combination had been set to disengage the lock the doors could only be opened by pulling the two handles in opposite directions. The inner door to the safe was equipped with a latch but not a lock. Mr. Scarborough's normal practice during store hours was to keep the doors of the safe closed and to give the combination a half turn only. Thus, by turning the dial back to zero, the safe could be opened. No other knowledge of the combination was required.

At approximately 2:00 p.m. on 23 September 1975, Mr. Scarborough was in the office working on the store's books. He left the office to assist his clerks with some customers. After the customers had departed, he heard a "clicking noise in the vicinity of the nail bin which was about twenty feet from the staircase going to the office." Mr. Scarborough went to investigate and discovered defendant on his knees astraddle one of the cash boxes from the safe, trying to open it with a ten-penny nail. Defendant fled and Mr. Scarborough pursued him into a "kudzu patch and tree area." Shortly thereafter the police apprehended defendant in the vicinity.

An inspection of the safe revealed it ransacked, the drawers open, and the deposit book, which contained the two hundred dollars, gone. Both the outer and inner doors were open. The safe was not damaged in any manner and no burglary tools were seen around the safe. Mr. Scarborough never again saw the deposit container or the money.

At the close of the State's evidence defendant moved to dismiss the charge of safecracking. The motion was denied, and defendant presented no evidence.

The case was submitted to the jury on the issues of felonious larceny, nonfelonious larceny, and safecracking. The jury returned verdicts of guilty of felonious larceny and safecracking. The Court of Appeals reversed the safecracking conviction on the ground that there was no evidence defendant forcibly opened the safe or "picked" its combination and that his motion to dismiss should have been allowed.

*Attorney General Rufus L. Edmisten and Associate Attorney Thomas H. Davis, Jr., for the State.*

*H. P. Taylor, Jr., for defendant appellee.*

SHARP, Chief Justice.

[2]  In passing upon the validity of a motion to dismiss or for judgment as of nonsuit, the Court considers the evidence in the light most favorable to the State, giving it the benefit of every legitimate inference arising therefrom. If there is any competent evidence tending to establish each material element of the offense charged in the bill of indictment the motion must be overruled. *See generally* 4 Strong's N. C. Index, *Criminal Law* §§ 104, 106, 176 (1976). Plenary evidence established that defendant unlawfully opened the safe and feloniously took and carried therefrom money belonging to Mr. Scarborough. However, there is no evidence, nor does the indictment charge, that defendant used or attempted to use "explosives, drills, or tools" or otherwise forced open the safe. This appeal presents the question whether the record contains any evidence that defendant "picked the combination" of the safe within the meaning of the term *pick* as it is used in G.S. 14-89.1. Although we have considered numerous appeals in prosecutions brought under this statute since its enactment as Chapter 653 of the Session Laws of 1961, we have not heretofore been called upon to resolve the question now before us.

[1]  "It is elementary that a criminal statute must be construed strictly. *State v. Garrett,* 263 N.C. 773, 140 S.E. 2d 315; *State v. Heath,* 199 N.C. 135, 153 S.E. 855, 87 A.L.R. 37; Strong, N. C. Index, *Statutes* § 5. Adams, J., speaking for the Court in the *Heath* case, said: 'The forbidden act must come clearly within the prohibition of the statute, for the scope of a penal statute will not ordinarily be enlarged by construction to take in offenses not clearly described; and any doubt on this point will be resolved in favor of the defendant.' " *State v. Hill,* 272 N.C. 439, 158 S.E. 2d 329 (1968). *Accord, State v. Scoggin,* 236 N.C. 1, 72 S.E. 2d 97 (1952). Strictly and grammatically construed, G.S. 14-89.1 prohibits the unlawful and forcible opening, attempt to open, or picking of a safe or vault by the use of "explosives, drills, or tools." These three methods are described in an adverbial clause which clearly modifies each element of the compound predicate. Thus, each method of opening a safe must

be by means of "explosives, drills, or tools" in order to fall within the prohibition of the statute.

We have examined the cases brought under G.S. 14-89.1 and appealed to this Court since 1961 and also those which were carried no further than the Court of Appeals. In every case, entry to the safe was gained or attempted by means of tools. *See e.g., State v. Lewis,* 281 N.C. 564, 189 S.E. 2d 216 (1972) (chisels and sledge hammer) ; *State v. Battle,* 279 N.C. 484, 183 S.E. 2d 641 (1971) (hammer, chisel, bar and drill) ; *State v. Spears,* 268 N.C. 303, 150 S.E. 2d 499 (1966) (ax, pickax and acetylene torch). ·

The conclusion that the "picking" of a safe must, to come within the prohibition of the statute, be accomplished by means of a picklock (explosives and drills being clearly in apposite) is reinforced by reference to a dictionary. The authoritative Webster's New International Dictionary (2d ed. 1951) defines the transitive verb *pick:* to open (a lock) by or as by a wire." The more casual third edition has not changed this meaning: "to turn (a lock) with a wire or a pointed tool instead of the key esp. with intent to steal." Webster's New International Dictionary (3rd ed. 1964). Thus, to the lexicographer, the word *pick,* when used to describe a method of theft, necessarily implies the use of a special tool. In *State v. Pinyatello,* 272 N.C. 312, 158 S.E. 2d 596 (1968), a case in which the defendant was charged with feloniously opening a safe and vault "by the use of an ax and two crowbars and other tools," he contended that G.S. 14-89.1 applied only to safes with combinations. The Court rejected that argument by indicating that the word *pick* in the statute referred to a mode of gaining entry into safes or vaults without combinations.

[2]   The State contends that the adoption of the dictionary definition of *pick* would necessarily exclude entry to safes gained through divining their combinations by means of careful listening to the sound of the falling tumblers. We consider it extremely improbable that entry into a locked combination safe could be gained by this method without the use of a stethoscopic tool. However, this case does not present that problem. Here, defendant merely opened the doors to an essentially unlocked safe by a half-turn of a knob. In doing so he demonstrated neither particular preparation nor prowess, and he employed no explosives, drills, or tools.

We believe the purpose of G.S. 14-89.1, which authorizes a maximum sentence of thirty years, was to single out for special punishment those criminals who open or attempt to open a safe or vault by means of the special implements (explosives, drills, or tools) specified in G.S. 14-89.1. If, however, we have misconstrued the legislative intent, and it was indeed intended that G.S. 14-89.1 embrace the unlawful entry into or attempt to open a safe or vault by any manipulation of the combination, it will be a simple matter for the General Assembly to amend the section.

The decision of the Court of Appeals sustaining defendant's conviction of felonious larceny and vacating his conviction of safecracking is

Affirmed.