STATE OF NORTH CAROLINA v. ROBERT ARCHIE CLEMMONS, JR.

No. 9218SC78

(Filed 17 August 1993)

1. **Corporations § 16.1 (NCI3d)— promise to invest victim's money—investments not made—defendant not "transacting business"—no violation of N.C.G.S. § 78A-36(a)**

   Defendant did not actually "transact business" so as to come within the purview of N.C.G.S. § 78A-36(a) by misrepresenting to his victims that he had invested their money in stock options where defendant never purchased the stock options; the State's evidence showed only that defendant gave the victims the false impression that he was a "broker" or "licensed broker"; and the evidence showed that defendant was not a registered dealer or salesman under the N. C. Securities Act.

   **Am Jur 2d, Corporations § 42.**

2. **False Pretenses § 37 (NCI4th)— obtaining property by false pretenses—jury instruction not specific like indictment—no variance**

   While the trial court's instruction on obtaining property by false pretenses failed to mention the exact misrepresentation alleged in the indictment, there was no fatal variance between the indictment, the proof presented at trial, and the instructions given to the jury where the indictment stated that the false pretense was defendant's false representation that he was a registered dealer or salesman of securities; the evidence showed that defendant obtained property (the victim's money) by false pretenses (the statements that defendant was a "broker" or "licensed broker" and that their money

would be invested in stock options); and the instruction was a general one which stated the elements of the crime.

**Am Jur 2d, Trial §§ 1120, 1124.**

3. **False Pretenses § 45 (NCI4th)— obtaining money by false pretenses—restitution as condition of probation—requiring defendant to sign confession of judgment—error**

   The trial court in a prosecution for obtaining property by false pretenses erred in ordering defendant to sign confessions of judgment in favor of the five victims as a condition of probation, since the imposition of restitution as a condition of probation, as permitted by statute, is not a legal obligation equivalent to a civil judgment.

**Am Jur 2d, Criminal Law § 1051.**

Appeal by defendant from judgments entered 22 August 1991 by Judge W. Russell Duke, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 10 February 1993.

Defendant was convicted of five counts of obtaining property by false pretenses in violation of G.S. 14-100 (89 CRS 50369-71, 89 CRS 56998, 90 CRS 20347) and eighteen counts of transacting business in securities without being licensed or registered with the Secretary of State in violation of G.S. 78A-36 of the North Carolina Securities Act (89 CRS 56999, 89 CRS 57000, 89 CRS 57002, 89 CRS 57013-20, 89 CRS 57031, 89 CRS 57033, 89 CRS 57040-42, 89 CRS 57044, 90 CRS 20351). The State's evidence tended to show that defendant obtained money from several individuals by telling them that he was a "broker" or "licensed broker" and that he would invest the money for them in stock options in corporations including *inter alia* Texaco, United Airlines, and RJR. There was no evidence that any stock options were actually purchased or sold by defendant.

Defendant presented no evidence at trial. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Anita LeVeaux Quigless, for the State.*

*McNairy, Clifford, Clendenin & Parks, by Robert O'Hale, for defendant-appellant.*

EAGLES, Judge.

Defendant argues that the trial court erred by failing to dismiss the count of the alleged violations of the North Carolina Securities Act (Chapter 78A of the General Statutes) and by failing to instruct the jury on the specific misrepresentation as alleged in the indictments on obtaining property by false pretenses (G.S. 14-100). As to the alleged Chapter 78A violations, we agree and reverse the judgments. As to the G.S. 14-100 charges, we find no error.

I.

Each verdict sheet for the alleged Chapter 78A violations appeared as follows:

We, the jury, unanimously return as our verdict that the defendant is:

1. _____ Guilty of violating the North Carolina Securities Act by transacting business in securities on [applicable date], without being licensed or registered to do so by the North Carolina Secretary of State as a dealer or salesman, or

2. _____ Not Guilty

In the North Carolina Securities Act (hereinafter "the Act"), G.S. 78A-36 (entitled "Registration requirement"), upon which these charges were based, provides:

(a) It is unlawful for any person to transact business in this State as a dealer or salesman unless he is registered under this Chapter. No dealer shall be eligible for registration under this Chapter, or for renewal of registration hereunder, unless such dealer is at the time registered as a dealer with the Securities and Exchange Commission under the Securities Exchange Act of 1934; any dealer specializing in church securities may be registered to offer or sell only those securities which are issued by churches located within this State.

G.S. 78A-36. One "who willfully violates" G.S. 78A-36(a) "shall upon conviction be punished as a Class I felon." G.S. 78A-57(a). "That penal statutes must be construed strictly is a fundamental rule. The forbidden act must come clearly within the prohibition of the statute, for the scope of a penal statute will not ordinarily be enlarged by construction to take in offenses not clearly described; and *any doubt* on this point will be resolved in favor of the defend-

ant." *State v. Heath*, 199 N.C. 135, 138, 153 S.E. 855, 857 (1930) (interpreting former Chapter 78, Securities Law, which was repealed by Session Laws 1973, c. 1380, which enacted Chapter 78A of the General Statutes in its place, *see* G.S. 78A-1) (emphasis added) (citations omitted). Since G.S. 78A-36(a) is a criminal statute, we must utilize a strict construction. *Heath*, 199 N.C. at 138, 153 S.E. at 857.

[1] The crux of our inquiry is whether defendant actually did "transact business" so as to come within the purview of G.S. 78A-36(a) by *misrepresenting* to the victims that he had invested their money in stock options when, in fact, defendant *never purchased* the stock options and when the State's evidence showed only that defendant gave the victims the false impression that he was a "broker" or "licensed broker." The State concedes that "[t]he evidence showed that the Defendant was not a registered dealer or salesman" under the North Carolina Securities Act. *See* G.S. 78A-36 through G.S. 78A-40 (Article 5 — entitled "Registration of Dealers and Salesmen"; requiring registration with the Secretary of State).

The first sentence of G.S. 78A-36(a) provides that "It is unlawful for any person to *transact business* in this State as a *dealer* or *salesman* unless he is registered under this Chapter." (Emphasis added.) The Act does not define the phrase "transact business." However, G.S. 78A-36(a) provides that it is unlawful to "transact business . . . as a *dealer* or *salesman*" and the terms "dealer" and "salesman" are specifically defined in G.S. 78A-2 (entitled "Definitions") as follows:

(2) "Dealer" means any person engaged in the business of effecting transactions in *securities* for the account of others or for his own account. "Dealer" does not include:

a. A salesman,

b. A bank, savings institution, or trust company,

c. A person who has no place of business in this State if

1. He effects transactions in this State exclusively with or through (i) the issuers of the securities involved in the transactions, (ii) other dealers, or (iii) banks, savings institutions, trust companies, insurance companies, investment companies as defined in the Investment Company Act of 1940, pension or profit-sharing

trusts, or other financial institutions or institutional buyers, whether acting for themselves or as trustees

. . . .

. . . .

(9) "Salesman" means any individual other than a dealer who represents a dealer in effecting or attempting to effect purchases or sales of *securities*.

G.S. 78A-2 (emphasis added). The definitions of "dealer" in G.S. 78A-2(2) and "salesman" in G.S. 78A-2(9) each refer to "securities." "Security" is defined under the Act as follows:

(11) "Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract including without limitation any investment contract taking the form of a whiskey warehouse receipt or other investment of money in whiskey or malt beverages; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

G.S. 78A-2(11).

Here, there is no evidence that defendant purchased a "security" nor is there any evidence that defendant attempted to purchase a "security." Rather, the evidence reflects that the defendant falsely told the victims that he would invest their money in stock options and subsequently falsely told the victims that he had invested their money in stock options when, in fact, defendant never actually purchased or sold a "security" as defined by G.S. 78A-2(11). In sum, the State failed to present evidence linking defendant's offer to invest money for the victims to any participation of defendant in an actual transaction involving a "security" as defined by G.S. 78A-2(11).

G.S. 78A-36(a) states, "It is unlawful for any person to transact business in this State as a dealer or salesman unless he is registered under this Chapter." G.S. 78A-36(a) provides that it is a crime to "transact business" without being registered; it does *not* provide that it is a crime to *offer* to "transact business" without being registered. We base this observation on the fact that the term "offer" is specifically defined under the Act and even appears elsewhere in G.S. 78A-36(a). G.S. 78A-2(8)(b) (" 'Offer' or 'offer to sell' includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value"). The term "offer" is not found in the first sentence of G.S. 78A-36(a), the statutory provision on which the State relies here. (Similarly, the term "offer" is *not* used in the definitions of "dealer" in G.S. 78A-2(2) or "salesman" in G.S. 78A-2(9).) However, G.S. 78A-36(a) *does* in fact use the term "offer," *not* in the first sentence which is at issue here, but only in the second sentence: "any dealer specializing in church securities may be registered to *offer* or sell only those securities which are issued by churches located within this State." G.S. 78A-36(a). Accordingly, we conclude from the plain language of G.S. 78A-36(a) that had the General Assembly intended to impose criminal liability for defendant's misconduct, the first sentence of G.S. 78A-36(a) would have included language dealing with "offering to transact business" in securities. However, it does not, and defendant's misconduct here does not fall within the scope of G.S. 78A-36(a) as currently written.

In contrast to Chapter 78A, other licensing statutes which impose criminal liability for unlicensed conduct *expressly* state that the *offering* of one's services constitutes criminal conduct. *Compare* G.S. 78A-36(a) ("It is unlawful for any person to transact business in this State as a dealer or salesman unless he is registered under this Chapter.") *with e.g.,* G.S. 90-29(a) ("No person shall engage in the practice of dentistry in this State, or offer or attempt to do so, unless such person is the holder of a valid license . . . ."); G.S. 58-18-5 ("No individual . . . as the agent of another or as a broker, shall sell or offer for sale, or in any way assist in the sale in this State of the securities of any promoting or holding corporation, or of any insurance corporation . . . without first procuring, as hereinafter provided, a certificate of authority . . . ."); G.S. 90-270.16(a) ("[N]o person shall represent himself to be a practicing psychologist, or psychological associate, or engage in, or offer to engage in, the practice of psychology without a valid

license . . . ."); G.S. 89E-18(2) ("It shall be unlawful for any person to publicly practice, or offer to publicly practice, geology . . . or advertise any title or description tending to convey the impression that he or she is a licensed geologist, unless such person has been duly licensed . . . ."); G.S. 90-171.43 ("No person shall practice or offer to practice as . . . a registered nurse or licensed practical nurse unless that person is currently licensed"); G.S. 83A-12 ("It shall be unlawful for any individual . . . to practice or offer to practice architecture . . . unless such person holds a current individual or corporate certificate of admission to practice architecture . . . ."); G.S. 93A-1 ("[I]t shall be unlawful for any person . . . to act as a real estate broker or real estate salesman, or directly or indirectly to engage or assume to engage in the business of real estate broker or real estate salesman or to advertise or hold himself or themselves out as engaging in or conducting such business without first obtaining a license . . . .").

In utilizing a strict construction of G.S. 78A-36(a), we fully recognize that

> while a criminal statute must be strictly construed, the courts must nevertheless construe it with regard to the evil which it is intended to suppress. The intent of the legislature controls the interpretation of a statute. When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein. But when a statute is ambiguous or unclear in its meaning, resort must be had to judicial construction to ascertain the legislative will and the courts will interpret the language to give effect to the legislative intent . . . .
>
> . . . Finally, it is a well settled rule of statutory construction that, where a literal interpretation of the language of a statute would contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded.

*In re Banks*, 295 N.C. 236, 239-40, 244 S.E.2d 386, 388-89 (1978) (citations omitted). We conclude that defendant's misconduct is not "the evil which" G.S. 78A-36 "is intended to suppress." *Id.* at 239, 244 S.E.2d at 338. Granted, the statements made by defendant were false and it is apparent that defendant used the *lure of an*

*investment in securities* to obtain the victims' money. However, this is quite different from a factual situation in which an individual actually purchases or sells a "security" for another's supposed benefit without being registered to do so. G.S. 78A-2(11). It is against this latter type of unregistered conduct which we believe that G.S. 78A-36 was designed to protect. Given the strict construction required in dealing with penal statutes, we conclude that G.S. 78A-36 does not apply to defendant's acts in this case. *Cf. State v. Williams*, 98 N.C. App. 274, 278-79, 390 S.E.2d 746, 748-49, *disc. rev. denied*, 327 N.C. 144, 394 S.E.2d 184 (1990) ("mere signing of a stock certificate by a corporate officer" not included within the definition of "sale" under G.S. 78A-8(a); because "defendant did not sell the unregistered security in question, he was not a 'salesman' (or a dealer), and therefore was not subject to the requirements of § 78A-36").

Although the evidence presented by the State is insufficient to support an indictment under Chapter 78A, *supra*, we note that it is clear that there is sufficient evidence in this record to support an indictment for a violation of G.S. 78C-8 (of the North Carolina Investment Advisers Act) which provides:

> (a) It is unlawful for any person who receives, directly or indirectly, any consideration from another person for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise,
>
> (1) To employ any device, scheme, or artifice to defraud the other person,
>
> (2) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon the other person . . .

G.S. 78C-8. *See* G.S. 78C-39(a) (one who violates G.S. 78C-8 "shall upon conviction be punished as a Class I felon"). Here, the State presented evidence showing that defendant advised the victims, for a 10% commission, to invest in the securities of corporations including RJR, United Airlines, and Texaco and that defendant told the victims that the value of these securities would increase by various amounts in the future, promising extravagantly large returns on their original investment.

While Chapter 78C could apply to the misconduct here, the General Assembly could amend Chapter 78A to make its provisions applicable to future misconduct of the type at issue here by using wording similar to the various licensing statutes listed *supra*, to the effect that G.S. 78A-36(a) is violated by one's mere offer to invest another's money in securities after creating the impression that one is a broker, dealer, or salesman. However, under the current version of G.S. 78A-36(a), we conclude defendant's acts do not "come clearly within the prohibition of the statute" and accordingly our strong "doubt" as to the applicability of G.S. 78A-36(a) here is "resolved in favor of the defendant." *Heath*, 199 N.C. at 138, 153 S.E. at 857. However, we reiterate that on this record defendant's misconduct would clearly support an indictment under G.S. 78C-8 and such an indictment would not be a violation of constitutional provisions regarding double jeopardy. Accordingly, the cause is remanded with instructions to dismiss the Chapter 78A indictments, with leave to the State to obtain Chapter 78C indictments, if it is so advised.

II.

[2] Next, defendant argues that the trial court erred by failing to instruct the jury on the specific misrepresentation as alleged in the indictment. We disagree.

The indictments stated that "[t]he false pretense consisted of the following: defendant represented he was a registered dealer or salesman of securities under [G.S.] 78A-36, when in fact he was not." Defendant contends that the trial court erred by giving the following false pretense instruction to the jury:

First, that the defendant made a representation to another. And a representation may be made by writing, words, or acts. Second, that this representation was false. Third, that this representation was calculated and intended to deceive. Fourth, that the victim was in fact deceived by this representation. And fifth, that the defendant thereby obtained or attempted to obtain property from the victim.

Defendant argues that the trial court should have instructed the jury that to find defendant guilty, they had to find that he falsely represented that he was a registered dealer or salesman of securities as provided in the indictments. Defendant contends that "[w]e have no way of knowing if the jury convicted the defendant on five

false pretense counts because he made the misrepresentation as alleged in the indictment that he was a dealer or salesman in securities or whether the jury convicted the defendant because of other misrepresentations which they believe he had made to the witnesses who testified in the case." We disagree. G.S. 14-100 provides:

> (a) If any person shall knowingly and designedly by means of any kind of false pretense whatsoever, whether the false pretense is of a past or subsisting fact or of a future fulfillment or event, obtain or attempt to obtain from any person within this State any money, goods, property, services, chose in action, or other thing of value with intent to cheat or defraud any person of such money, goods, property, services, chose in action or other thing of value, such person shall be guilty of a felony.

"It is clearly the rule in this jurisdiction that the trial court should not give instructions which present to the jury possible theories of conviction which are either not supported by the evidence or not charged in the bill of indictment." *State v. Taylor*, 304 N.C. 249, 274, 283 S.E.2d 761, 777 (1981), *cert. denied*, 463 U.S. 1213, 77 L.Ed.2d 1398, *rehr'g denied*, 463 U.S. 1249, 77 L.Ed.2d 1456. Here, the State's evidence showed that defendant obtained property (the victims' money) by false pretenses (the statements that defendant was a "broker" or "licensed broker" and that their money would be invested in stock options). While the instruction on obtaining property by false pretenses failed to mention the exact misrepresentation alleged in the indictment, we conclude that there is no fatal variance between the indictment, the proof presented at trial, and the instructions given to the jury. Accordingly, this assignment of error fails.

### III.

[3] Defendant's final assignment of error asserts that "[t]he trial court erred in ordering the defendant to sign confessions of judgment in favor of the five victims as a condition of probation." We agree.

For the obtaining property by false pretenses charges (G.S. 14-100), defendant received an eight-year active sentence. This sentence was suspended on the conditions that 1) defendant serve an active sentence of six months; 2) defendant pay restitution to

the five victims in the amount of $152,900.00; 3) defendant sign confessions of judgment in favor of each of the victims, and; 4) defendant "pay on a monthly basis 20% of his net income on restitution . . . [which] will be credited against the confession of judgment."

A confession of judgment is a procedure in a civil action which requires *inter alia* that "[a] prospective defendant desiring to confess judgment shall file with the clerk of the superior court . . . a statement in writing signed and verified or sworn to by such defendant authorizing the entry of judgment for the amount stated." G.S. 1A-1, Rule 68.1(b). Here, the State concedes in its brief that

> [t]he confession of judgment is repetitive and merely echoes the terms of the ordered restitution in the amount of $152,900. We submit, any duplicated language, by way of a confession of judgment, is surplusage and *can be ignored.* . . .
>
> We recognize that no criminal court can compel any Defendant to do something which is within the realm of a civil forum, i.e., confess judgment.

(Emphasis added.)

In *State v. Smith*, 99 N.C. App. 184, 186-87, 392 S.E.2d 625, 626-27 (1990), this Court stated:

> Restitution, imposed as a condition of probation, is *not* a legal obligation equivalent to a civil judgment, but rather an option which may be voluntarily exercised by the defendant for the purpose of avoiding the serving of an active sentence. *Shew v. Southern Fire & Casualty Co.*, 307 N.C. 438, 298 S.E.2d 380 (1983). Such an imposition of restitution "does not affect, *and is not affected by*, the victim's right to institute a civil action against the defendant based on the same conduct[.]" *Id.* (Citations omitted and emphasis added.) "Civil liability need not be established as a prerequisite to the requirement of restitution as a probation condition." *Id.* (Citations omitted.)
>
>  . . . .
>
>  . . . [B]y tying the amount which may be imposed as restitution to such compensation as could ordinarily be recovered in a civil action, the General Assembly meant only that the trial court must refer to the *measure* of recoverable damages applying in the relevant civil action—such as the measure

of damages in a wrongful death action — for the limited purpose of computing an appropriate restitutionary amount to be imposed as a condition of probation under G.S. § 15A-1343(d). This was implicitly recognized by this Court in our prior opinion in this case. *See State v. Smith*, 90 N.C. App. at 167-69, 368 S.E.2d at 38-39.

Since the imposition of restitution as a condition of probation "is not a legal obligation equivalent to a civil judgment," *id.*, we conclude that the trial court erred in requiring defendant to sign the confessions of judgment as a condition of probation. Accordingly, we vacate that condition in the defendant's sentence and that part of the judgment. All remaining portions of the judgment in 89 CRS 50370 (G.S. 14-100) are affirmed.

Defendant's remaining arguments fall outside the scope of defendant's assignment of error and cannot be considered on appeal. N.C. R. App. P. 10(a).

IV.

In sum, we find no error on the obtaining property by false pretenses (G.S. 14-100) charges. We reverse the trial court's denial of defendant's motion to dismiss the Chapter 78A charges and we remand the cause with instructions to dismiss the Chapter 78A indictments, with leave to the State to obtain Chapter 78C indictments, if it is so advised. As to the sentences imposed for the G.S. 14-100 convictions, we vacate that part of the judgment purporting to require defendant to sign confessions of judgment.

Accordingly, the results are:

As to 89 CRS 56999, 89 CRS 57000, 89 CRS 57002, 89 CRS 57013-20, 89 CRS 57031, 89 CRS 57033, 89 CRS 57040-42, 89 CRS 57044, 90 CRS 20351 — reversed and remanded; and

As to 89 CRS 50369, 89 CRS 50370, 89 CRS 50371, 89 CRS 56998, 90 CRS 20347 — affirmed in part; vacated in part.

Judges COZORT and WYNN concur.