STATE *v.* BAKER

---

STATE OF NORTH CAROLINA v. CONNIE BAKER #1586; RONALD CHAMBLEE #1589

No. 686SC327

(Filed 11 December 1968)

**1. Criminal Law § 106— sufficiency of evidence to overrule nonsuit**

If there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.

**2. Robbery § 4— sufficiency of evidence**

The circumstantial evidence presented by the State *is held* sufficient to be submitted to the jury as to defendants' guilt of armed robbery.

**3. Criminal Law § 106— sufficiency of circumstantial evidence**
> The test of the sufficiency of circumstantial evidence to withstand a motion for nonsuit is the same as the rule applicable to direct evidence.

APPEAL by defendants from *Mintz, J.,* 8 April 1968 Session (second week), HERTFORD Superior Court.

The defendants were charged in separate bills of indictment with the felony of robbery with firearms on 5 January 1968 of money from the person of one Dennis Babb. Connie Baker was charged in case No. 1586, and Ronald Chamblee was charged in case No. 1589. The cases were consolidated for trial and for the purposes of this appeal. Upon their pleas of not guilty defendants were tried by jury which returned a verdict of guilty as charged as to each defendant. From the verdicts and judgments of confinement each defendant appealed.

*T. W. Bruton, Attorney General, by Bernard A. Harrell, Assistant Attorney General, for the State.*

*Jones, Jones & Jones, by Joseph J. Flythe, for the defendants.*

BROCK, J.

[1]   The sole assignment of error brought forward for consideration is to the denial of defendants' motions for judgment of nonsuit. Each of the defendants rested without offering evidence, and we, therefore, must consider the State's evidence in the light most favorable to it. And if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, we must hold that the cases were properly submitted to the jury. *State v. Bogan,* 266 N.C. 99, 145 S.E. 2d 374.

The evidence for the State consisted of the testimony of witnesses and of exhibits as follows:

Dennis Babb testified that on the night of 5 January 1968 he was in Hertford County riding with Jesse Hoggard and two girls. That he and one of the girls were in the back seat, that Jesse was driving and the other girl was in the front seat. That at about 9:30 p.m. they went to a place near Ahoskie called the "Big Oak," which he described as a parking place for teenagers. That after having been there about 15 or 20 minutes, two "fellows" came up to the driver's side of the car with a flashlight and indicated that they wanted the window rolled down. That Jesse rolled the glass down

and one of the two "fellows" poked a rifle in the window and de-manded that Jesse turn over his wallet. That about that time an automobile pulled up approximately beside them and the person with the flashlight shined the light of the flashlight into the eyes of the driver of the other car and the driver of the other car drove on down the street. That then the two persons turned back to them and one of them said, "I will give you three seconds to hand over your wallet." That Jesse could not find his wallet and that the wit-ness pulled out his wallet and handed the person outside the car $83.00. That the persons outside the car then told them "that man is going to the cops; there is going to be a raid back here in a few minutes; you'd better leave." That they drove away and went straight to the police station where they reported the incident. This witness further testified that he did not know who the people were that came up outside the car and got his money, but that he handed it to them because one was threatening him with a gun. That he could tell that both of them were male persons.

Jesse Hoggard testified that on the night of 5 January 1968 he was driving his father's 1966 blue Ford automobile and that Dennis Babb and two girls were riding with him. This witness's testimony corroborated that of Dennis Babb with respect to what transpired at the "Big Oak." In addition, this witness testified that the per-son that had the gun had on a black slick coat. That he could not tell much about the other person, but that both of them were wear-ing three-quarter length coats, and that the gun looked like a rifle to him because it was too long to be a pistol.

Glenn Carawan testified that he lived in a subdivision known as Colonial Acres near Ahoskie, and that the "Big Oak" is located near the subdivision and about the equivalent of two blocks from his home. That on the night of 5 January 1968 he arrived home from attending a ball game at about 9:30 and found a white 1962 Chev-rolet automobile parked near the front of his house. That he drove his car up to the front of the white Chevrolet with his lights on and someone raised up from underneath the driver's wheel in that white car, and that a second person raised up in the back seat. That he told the person at the wheel that he would appreciate it if he would move because he did not like anyone parking in front of his home. That thereafter the person backed the white Chevrolet up and turned down a street near the end of the subdivision. He further testified that he decided to observe what was going on around the "Big Oak" and drove down to that location. That when he arrived, he saw a blue 1966 Ford automobile parked and saw· two men with a flashlight standing on the driver's side of the parked blue Ford

automobile. That as he came near it, he determined that it was two colored boys about the age of 20 years. That each of them was wearing a three-quarter length black jacket and small-brimmed hats. That as he neared the parked Ford automobile, the colored boy with the flashlight shined the light in his eyes and he decided to drive on away. That he drove about 200 to 300 feet and turned around and was on his way back to the "Big Oak" when the blue Ford drove towards him with its bright lights on and that he could not see anything. That he decided that he would then go to the police station to report what he had seen.

Gloria Jean Beasley testified that on the night of 5 January 1968 she was riding in a beige, almost white, 1962 Chevrolet automobile with the two defendants and that one Thomas Chamblee was driving. That the driver parked the car and the two defendants got out and went into the woods. That while they were so parked, Mr. Carawan came up and asked them to move. That she was in the back seat. That Thomas Chamblee backed up and drove around the block and came back and parked and that the two defendants got back into the car and told Thomas to drive. That they had waited on the two defendants about 15 to 20 minutes. That she did not see the two defendants take anything with them when they got out of the car and walked into the woods, but when they came back to the car, they were both running and Ronald Chamblee had a gun in his hands. That when they got back into the car, they started talking about what good jobs they had done. That she asked Connie Baker what he had done, and he told her to shut up, and so she did not say anything else. That the defendant Ronald Chamblee had on a black leather coat and was wearing a hunting cap. That the defendant Connie Baker had on a short suede-like coat and a black hat.

Deputy Sheriff Liverman testified that he arrested the two defendants on the charge of armed robbery. That he arrested the defendant Ronald Chamblee at his home. That when he dressed, he put on a three-quarter length coat which was marked as State's Exhibit A. That when he arrested the defendant Connie Baker, that he put on the coat which was marked State's Exhibit B. That when he talked to them, both of them denied taking part in the robbery.

The two coats marked State's Exhibit A and State's Exhibit B were earlier identified by the witness Gloria Jean Beasley as the coats that the defendants were wearing the night of 5 January 1968.

The foregoing evidence is substantial evidence of the following elements of the offense charged: That two male persons, wearing dark three-quarter length coats, with the use of a gun whereby the

life of Dennis Babb was threatened, took from the person of Dennis Babb the sum of $83.00, the property of Dennis Babb, with the intent to permanently deprive Dennis Babb of the same, and to convert it to their own use.

The foregoing evidence is also substantial evidence of the following: That at the time of the felonious taking Dennis Babb was sitting in a car at the "Big Oak." That the two defendants rode in a car to a point approximately two blocks from the "Big Oak." That each of the two defendants was wearing a dark three-quarter, or short coat. That the defendants got out of their car and walked into the woods. That two male persons wearing dark three-quarter or short coats, came to the car at the "Big Oak" in which Dennis Babb was seated and, with a gun pointed into the window of the car, demanded his money. That the two male persons then told Dennis Babb that the police were going to raid the place and for them to leave, and that Dennis Babb and his companions drove away. That the defendants returned to their car in about 15 to 20 minutes after they had left it. That when they returned to the car they were running, and one of them had a gun. That they got into the car and told the driver to "drive," and remarked that they had done a good job.

[2]   We hold that all of this evidence when taken together constitutes substantial circumstantial evidence that the two defendants were the two male persons who robbed Dennis Babb at the "Big Oak," and required submission of the cases to the jury.

[3]   The test of the sufficiency of circumstantial evidence to withstand a motion for nonsuit is the same as the rule applicable to direct evidence. It is not necessary that the circumstantial evidence must exclude every reasonable hypothesis of innocence before the cases can be submitted to the jury. If the State has offered substantial evidence of defendants' guilt, it becomes a question for the jury whether this evidence excludes every reasonable hypothesis of innocence and convinces them beyond a reasonable doubt that the defendants, and not some other persons, committed the crime charged. *State v. Bailiff*, 2 N.C. App. 608; *State v. Bogan*, 266 N.C. 99, 145 S.E. 2d 374.

In case No. 1586, No error.

In case No. 1589, No error.

BRITT and PARKER, JJ., concur.