STATE v. CHARLES ALBERT BOGAN.

(Filed 15 December, 1965.)

**1. Criminal Law § 101—**

　　If there is evidence, circumstantial, direct, or a combination of both, amounting to substantial evidence of each material aspect of the charge, motion to nonsuit should be denied, it being the province of the jury to determine whether the circumstantial evidence excludes every reasonable hypothesis of innocence.

**2. Larceny § 7—**

　　Evidence that defendant registered at a motel shortly after noon under an assumed name, that the next morning it was discovered that the air conditioner was missing from the room, together with testimony that a brownish stain, similar to the stain on the window of the motel room, was seen around an imprint on the floor of the trunk of defendant's car, and that around the imprint were splinters of wood and flakes of paint, with expert testimony that the splinters of wood and flakes of paint were similar to, and could have come from, the plywood from which the air conditioner had been taken, *held* sufficient to overrule nonsuit.

APPEAL by defendant from *Huskins, J.*, February 1, 1965 Regular Schedule "B" Criminal Session of MECKLENBURG.

Defendant was first tried in the Recorder's Court of Mecklenburg County upon a warrant which charged that on June 24, 1964, he feloniously stole and carried away one Coldspot air conditioner, the property of L. M. Thompson, which was valued at less than $200.00. He was found guilty and, from the judgment there imposed, he appealed to the Superior Court. Upon a trial *de novo* he was again convicted. The court pronounced a sentence of twelve months, and defendant appeals.

STATE *v.* BOGAN.

*Attorney General T. W. Bruton, Charles D. Barham, Jr., Assistant Attorney General, and Wilson B. Partin, Jr., Staff Attorney for the State.*

*James B. Ledford for defendant appellant.*

SHARP, J. Defendant's only assignment of error is to the refusal of the court to allow his motion for nonsuit at the close of the State's evidence, which tends to show:

L. M. Thompson owns and operates the Key Largo Motel. On June 24, 1964, around 12:20 p.m., defendant, Charles Albert Bogan, rented cottage #5 under the assumed name of Frank Godwin. James Jennings, an employee of the motel, registered him and the license number of his Ford, No. RR-411. When Jennings noticed that a lady accompanied defendant to the cottage, he added the words "and wife" to the registration card. There were two keys to cottage #5. Jennings gave one to defendant; the other remained in the motel office. In cottage #5 a Coldspot air conditioner, 12″ x 22″ x 22″ was installed in a window about 3′ x 5′ in size. Outside, it rested on a rusty iron frame on the sill. Plywood cut so as to "fit right down over it" framed the unit. This plywood frame had been painted often. The most recent coat had been brown or yellow. Jennings last saw the air conditioner in the room around 12:20 p.m. — before defendant checked into the motel. He last saw defendant between 4:00 and 5:00 p.m. when he observed him leave the motel premises. The woman, who came with him, left about 8:00 p.m. in a Chevrolet which came for her after she had made a phone call. She was later identified and was not his wife.

Around midnight on June 24th, the owner of the motel locked the office for the night. The office key to cottage #5 was still there. When he checked the cottages, he found the door to #5 unlocked. He looked in but he did not specifically notice the air conditioner. He "could have told if it was gone," however. On the assumption that defendant would return, Thompson did not look for the key. He locked the door and went to his quarters for the night. The next morning, the maid found the key on the television and observed that the air conditioner was missing from cottage #5.

Between 8:30 and 9:00 a.m., on June 25, 1964, Patrolman H. M. Price came to investigate the theft. He observed the opening in the window where the air conditioner had been mounted; that pieces of plywood were lying on the ground outside the motel window; and that the metal frame fastened to the bottom of the window was in a rusty condition. Patrolman Price picked up from the ground outside the window flakes of paint and some splinters

of plywood. The inside edges of the plywood frame which was still in the window were jagged and broken. Around the opening was yellow paint. At the top of the opening there was green and brown paint which had run down for a slight distance on some of the upper pieces of the frame.

Defendant's license number on the motel registration card revealed his true identity. When the police showed Jennings a photograph of defendant, he identified the man in the photograph as the man he had registered as Frank Godwin the preceding afternoon. They then went to defendant's home with a search warrant and a warrant charging him with "false registration in a motel." Defendant was there, and he readily gave the officers permission to examine his car. The search of the trunk of the car disclosed several tools: a chisel, two screwdrivers — one of which had been sharpened —, a pair of pliers, two "tire tools," and a crowbar. On the floor of the trunk, the officers found a rug which bore an imprint or impression "mashed into the rug." Although this imprint was not actually measured, it was, according to one patrolman, about 24 inches square, "or within three inches of that anyway." The rug imprint had a "brownish stain" on it similar to the stain on the sill of the window in cottage #5. Around the impression were splinters of wood and paint flakes, which the officers collected. The samples of paint chips and splinters collected at the motel and those taken from defendant's car were then forwarded in separate envelopes to the S. B. I. in Raleigh for comparison.

At the trial, an expert chemist of the State Bureau of Investigation testified that he made a chemical microscopic and spectrophotometric examination of the paint scrapings, and that those from the wood fragments in defendant's car were not in all respects identical with those collected at the motel. Some of the fragments from one sample showed the presence of gray, light brown, light brown, light green, and gray layers of paint which had been applied in that order. Some fragments from the other showed the presence of gray, white, gray, neutral, pink, neutral, white-gray, and charcoal black. In each envelope, however, there were yellow paint scrapings attached to a wood material; "it was on the surface." The "yellow paint scrapings or scales were similar in all respects tested." The wood was examined by Dr. A. C. Barefoot, an expert in the field of wood technology. He testified that all the wood samples were unmistakably Douglas Fir and that those from each envelope were "similar in all respects, in makeup and composition." Neither the chemist nor the wood technologist could say that either the paint scrapings or the wood splinters found in defendant's car

came from the motel. In the opinion of each, however, they could have come from the same source.

Defendant offered no evidence.

The State's evidence is circumstantial. The test of its sufficiency to withstand the motion for nonsuit, however, is the same whether the evidence is circumstantial, direct, or both. *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431. "If there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." *State v. Johnson,* 199 N.C. 429, 431, 154 S.E. 730, 731. This quotation, as Higgins, J. said in *State v. Stephens, supra,* is just "another way of saying there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss." 244 N.C. at 383, 93 S.E. 2d at 433. It does not mean that the evidence, in the court's opinion, excludes every reasonable hypothesis of innocence. Should the court decide that the State has offered substantial evidence of defendant's guilt, it then becomes a question for the jury whether this evidence establishes beyond a reasonable doubt that defendant, and no other person, committed the crime charged. *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728.

Considering the evidence in the light most favorable to the State, as we are required to do, we think the combination of facts here disclosed constitutes substantial evidence of defendant's guilt and not merely suspicious circumstances. It was, therefore, for the jury to say whether the evidence established defendant's guilt beyond a reasonable doubt. Presumably, the jury followed the trial judge's instruction that it should first determine what circumstances the evidence established beyond a reasonable doubt. Then, considering only those facts thus established, it would determine whether they were of such a nature and so related as to point unerringly to defendant's guilt and to exclude every rational hypothesis of innocence. The verdict of guilty will not be disturbed.

No error.