STATE OF NORTH CAROLINA v. PAUL DAVID HILL,
CASE NOS. 50-249, 50-249A, 50,249B.

(Filed 12 January, 1968.)

**1. Statutes § 10—**

A criminal statute must be strictly construed, and the import of the statute may not be extended by implication to include an offense not clearly described.

**2. Safecracking § 1—**

The offense of safecracking is the forcing open of a safe kept and customarily used for the storing of money or other valuables.

**3. Safecracking § 2—**

Evidence of the State that the defendant forced open a newly acquired safe not yet used by the owner to store money or other chattels, *is held* insufficient to be submitted to the jury on the issue of defendant's guilt of the offense of safecracking.

**4. Criminal Law § 106—**

If there is evidence, circumstantial, direct, or a combination of both, amounting to substantial evidence of each element of the offense charged, motion to nonsuit should be denied, it being in the province of the jury to determine whether the circumstantial evidence excludes every reasonable hypothesis of innocence.

**5. Burglary and Unlawful Breakings § 5;   Safecracking § 2—**

Evidence of the State that a locked building occupied by an automobile dealer was broken into at night, that an acetylene torch owned by the company was used to open a two-door safe where money and records were kept, that the defendant was seen shortly after the breaking with smut on his arms and hair and with small particles of burned metal and safe insulation material in his clothing, and that defendant admitted to an uncle that he had robbed the safe, *held* sufficient to be submitted to the jury on the issue of defendant's guilt of breaking and entering and of safecracking.

**6. Criminal Law § 43—**

Color slides taken of burn marks and blisters on the hands and arms of a defendant accused of safecracking by use of an acetylene torch are properly admitted into evidence to illustrate the testimony of witnesses.

APPEAL by defendant from *Snepp, J.,* at the 7 August 1967 Schedule "C" Criminal Session of MECKLENBURG.

By separate indictments, each proper in form, the first containing two counts, the defendant was charged with: (1) Feloniously breaking and entering a building occupied by Lee A. Folgers, Incorporated; (2) larceny of goods and money of Lee A. Folgers, Incorporated, as a result of such unlawful breaking and entering; (3) wilfully and feloniously forcing open a two-door safe of Lee A. Folgers, Incorporated, by the use of an acetylene torch; and (4) the wilful and felonious forcing open of a second safe of Lee A. Folgers, Incorporated, by the use of an acetylene torch.

A motion for judgment of nonsuit was allowed upon the larceny count of the first indictment. The jury found the defendant guilty upon the charge of felonious breaking and entering and upon the two charges of safe breaking. Upon each of the safe breaking charges the defendant was sentenced to confinement in the State Prison for 25 years, the sentence in the second to run concurrently with that in the first. Upon the breaking and entering charge the defendant was sentenced to confinement in the State Prison for 10 years, this sentence to run concurrently with that imposed in the first safe breaking case. From all of these judgments the defendant appeals, assigning as error the denial of his motions for judgment as of nonsuit, certain rulings upon the admission of evidence and the denial of his motions to arrest judgment, set the verdict aside, and grant a new trial.

The State offered evidence tending to show the following:

Between the closing hour on the day before and the reopening hour on the day named in the bills of indictment, the locked building occupied by Lee A. Folgers, Incorporated, an automobile dealer, was broken and entered. Valuable property, including automobiles and automobile parts belonging to the corporation, were in the building at that time. Acetylene torch equipment for cutting metal, normally kept in the corporation's service department, had been moved into and left in the portion of the building where the two safes, owned by the corporation, were located. Each safe had a combination lock. The two-door safe was used for the keeping therein of records, money and documents of the corporation. The other safe had just been acquired for the keeping therein of money, but had not yet been placed in its intended location in the office or put in

use and there was nothing in it. The two safes had been opened by burning with an acetylene torch. Metal containers, which had been in the two-door safe, had also been burned open with such a torch and contents thereof had been burned in the process.

William Hildreth, uncle of the defendant, testified for the State. The material portion of his testimony was to the effect that: The defendant arrived in Charlotte a few days before the break in and from then until after the break in was a guest in the Hildreth home. In the early morning of the day of the break in, a few minutes after it was discovered, the defendant drove up to the Hildreth home, in the uncle's car, having last been seen there at 9:30 p.m. the previous evening. His clothes had numerous little holes in them and he had smut on his arms and in his hair. He promptly went to bed and to sleep. Thereafter, the uncle heard about the break in. Being suspicious that the defendant had committed the offense, he awakened the defendant and told him of his suspicion. The defendant first denied responsibility and then admitted to his uncle that he was the one who had broken into the building and "robbed the safe." He showed his uncle some old coins which he had acquired in the process. (These coins were similar in denomination and vintage to some belonging to an officer of the corporation, who had kept them in his office.) Thereafter, the defendant and his uncle drove around in the uncle's automobile. In the meantime, the defendant had changed his clothes and had put in the back of the car the clothing worn by him when he returned to the uncle's house on the morning following the break in.

After the defendant was arrested the following day, the officers, with the uncle's permission, removed these articles of clothing from the car. They also removed from the defendant's feet the shoes worn by him when he returned to his uncle's home on the morning after the break in occurred, giving him other shoes to wear. The trousers, undershirt, and socks so taken from the automobile had burn holes in them. These articles of clothing and the shoes were examined in the F.B.I. laboratory, together with samples of debris taken from the safes and the surrounding floor area in the building of Lee A. Folgers, Incorporated. Upon the soles of the shoes and upon the shirt, undershirt, trousers and socks were found numerous small particles of burned metal and of safe insulation material. In the opinion of the expert making the examination, the particles of insulation material so found upon the clothing came from one of the safes of Lee A. Folgers, Incorporated, or from another safe made by the same manufacturer at about the same period of time.

At the time of the arrest, the arresting officer observed the defendant had a number of pock mark burns on his arms and burn

blisters on his finger tips. Color photographs and slides of his arms and hands, taken by a police officer while the defendant was in jail, were put in evidence by the State, over objection, to illustrate the testimony of the officer who took them, and of the F.B.I. agent who made the arrest, concerning the presence of burns on the defendant's arms and hands.

The defendant testified in his own behalf. He denied any connection with the break in or with the opening of the safes. To establish an alibi, he testified that on the night of the break in he left his uncle's home a few minutes after his uncle and aunt had done so. From there, he testified, he went to a place called "Jerry's Lounge," where he met a girl with whom he spent most of the evening and early morning hours, the rest of the time being accounted for, according to his testimony, by trouble with her automobile, in which they went for a ride and parked, and by his getting lost after leaving her due to his unfamiliarity with Charlotte. He denied telling his uncle that he had committed the break in and "robbery." He explained the burns on his hands and arms as having been caused when he was attempting to cook his own breakfast at his uncle's home and, in the process, splashed hot grease upon himself. He denied that the clothing in question was his or had been worn by him.

*Attorney General Bruton and Assistant Attorney General Harrell for the State.*

*Charles B. Merryman, Jr., for defendant appellant.*

LAKE, J. In Case No. 50-249B, the indictment charges that the defendant "unlawfully, wilfully and feloniously did, by the use of an acetylene torch force open a Herring Hall-Marvin safe, of Lee A. Folgers, Incorporated, a corporation, *used for storing chattels, money and other valuables.*" (Emphasis added.) As to this safe, the evidence for the State was:

> "Not anything was kept in that safe on June 13th and 14th of 1967. Not a thing. It had just been purchased for money, for a money safe. * * * Its design and purpose was for keeping the valuables of this corporation inside of it. We were to bolt it to the floor in the showroom in full view of the public and we just hadn't got to it."

G.S. 14-89.1 is the statute creating and describing the offense charged in this bill of indictment. It provides:

> "Any person who shall by the use of explosives, drills, or other tools unlawfully force open or attempt to force open or

'pick' the combination of a safe or vault *used for storing money or other valuables,* shall, upon conviction thereof, receive a sentence, in the discretion of the trial judge, of from ten years to life imprisonment in the State penitentiary." (Emphasis added.)

It is elementary that a criminal statute must be construed strictly. *State v. Garrett,* 263 N.C. 773, 140 S.E. 2d 315; *State v. Heath,* 199 N.C. 135, 153 S.E. 855, 87 A.L.R. 37; Strong, N. C. Index, Statutes, § 5. Adams, J., speaking for the Court in the *Heath* case, said: "The forbidden act must come clearly within the prohibition of the statute, for the scope of a penal statute will not ordinarily be enlarged by construction to take in offenses not clearly described; and any doubt on this point will be resolved in favor of the defendant."

In *State v. Whitehurst,* 212 N.C. 300, 193 S.E. 657, 113 A.L.R. 740, Stacy, C.J., speaking for the Court said:

"By the rule of strict construction, however, is not meant that the statute shall be stintingly or even narrowly construed (*S. v. Earnhardt,* 170 N.C. 725, 86 S.E. 960), but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used. *U. S. v. Wiltberger,* 5 Wheat. 76. Criminal statutes are not to be extended by implication or equitable construction to include those not within their terms, for the very obvious reason that the power of punishment is vested in the legislative and not in the judicial department. It is the General Assembly which is to define crimes and ordain their punishment."

In G.S. 14-89.1 the General Assembly has seen fit to provide for the imposition of a sentence of imprisonment up to life upon conviction of the offense there described. It has made an element of that offense the fact that the safe forced open be one "used for storing money or other valuables." Obviously, this phrase was intended to qualify and restrict the words "safe or vault." At least three constructions of this qualifying phrase are conceivable: (1) Intended or designed for use for the storing of money or other valuables; (2) actually containing money or other valuables at the time of the forcible opening; (3) kept and customarily used for the storing of money or other valuables as of the time of the forcible opening.

To adopt the first of these possible constructions would deprive the qualifying phrase of meaning, for all practicable purposes, since the words "safe or vault," in themselves, connote a receptacle for the keeping of things of value. To adopt the second of the above possible constructions of the qualifying phrase would, in our opinion, be a strained construction of the statute, for to give it that meaning

would prevent a conviction of one who, by the means specified in the statute, forces open a safe habitually used by the owner for the keeping of money or other valuables, but which, at the time of the forcible opening, happens to contain nothing of value. The third of the above possible constructions, therefore, is, in our opinion, the meaning intended by the Legislature and we so construe the statute.

We are brought, therefore, to the question of whether one has committed the offense forbidden by this statute, for which he may be imprisoned for the remainder of his life, when, with the requisite intent and by one of the specified methods, he forcibly opens a newly acquired safe, not yet installed in its intended location in the owner's place of business and which has never been used by the owner as a container for anything. We think the answer must be "No," and that the evidence of the State in Case No. 50-249B showed conclusively that one of the essential elements of the crime charged in the indictment was not present. Therefore, the defendant's motion for judgment of nonsuit in that case should have been allowed and the judgment in that case must be reversed.

In case No. 50-249, in which the defendant was charged in the indictment with breaking and entering the building, and in Case No. 50-249A, in which the defendant was charged in the indictment with the forcible opening of the two-door safe, the evidence of the State was clearly sufficient to require the submission of the issue to the jury, and the denial of the motion for judgment of nonsuit in each of those cases was proper.

The test of the sufficiency of the State's evidence to withstand a motion for judgment of nonsuit in a criminal action is the same whether the evidence is circumstantial, direct, or a combination of both. *State v. Tillman,* 269 N.C. 276, 152 S.E. 2d 159; *State v. Bogan,* 266 N.C. 99, 145 S.E. 2d 374. To survive the motion for nonsuit, it is not necessary that the Court be of the opinion that the evidence is sufficient to establish each element of the offense beyond a reasonable doubt. It is enough that there is substantial evidence of each element of the offense. If so, the issue must be submitted to the jury, and it is a question for the jury whether the evidence establishes each element of the crime beyond a reasonable doubt. *State v. Bogan, supra; State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431. When the evidence relied upon to establish an element of the offense charged is circumstantial, the court must charge the jury that it must return a verdict of not guilty unless the evidence points unerringly to the defendant's guilt and excludes every other reasonable hypothesis. *State v. Stephens, supra.* It is not necessary, however, that the judge must so appraise the evidence in order to overrule the motion for judgment of nonsuit.

·  The State introduced substantial evidence of each element of the offense of breaking and entering the building and of the offense of the forcible opening of the two-door safe, as charged in the indictment in Case No. 50-249 and 50-249A, respectively. The State also introduced substantial evidence to show that the defendant was the person who committed both of these offenses. The question of his guilt or innocence was, therefore, properly submitted to the jury in those two cases.

There was no error in admitting in evidence the color photographic slides prepared by the witness Toomey from photographs taken by him of the arms and hands of the defendant while the defendant was in jail two days after the break in occurred, or in permitting them to be exhibited to the jury by flashing them upon a screen in the courtroom. This evidence was offered and admitted for the purpose of illustrating the testimony· of this witness. He testified that the slides accurately depicted the condition which he observed upon the defendant's hands and arms. With the respective slides so shown upon the screen, he pointed out burn marks and blisters on each hand. "[W]here there is evidence of the accuracy of a photograph, a witness may use it for the restricted purpose of explaining or illustrating to the jury his testimony relevant and material to some matter in controversy." *State v. Gardner*, 228 N.C. 567, 46 S.E. 2d 824.

In any event, the witness Carr had previously testified that, at the time of the defendant's arrest on the preceding day, he observed pock mark burns and blisters on his arms and fingers, and the defendant himself testified to the presence of such burns. Mr. Carr's testimony that when he saw the burns, on the day before the pictures were taken, the burns were "much worse" because they were fresher than they appeared in the pictures does not support the defendant's contention that the introduction of the pictures in evidence prejudiced his case. It was for this reason only that Mr. Carr testified that the pictures did not correctly represent the appearance of the defendant's arms and hands as they were when he saw them on the day before the pictures were taken. There was nothing in his testimony to suggest that the pictures showed any burn marks or blisters which he did not observe on the day of the arrest.

The remaining assignments of error with reference to the admission of evidence have not been discussed in the defendant's brief and are, therefore, deemed abandoned. We have, nevertheless, examined these portions of the record and concur in the conclusion, ap-

parently reached by the defendant's counsel, that these exceptions are without merit.

As to Case No. 50-249: No error.
As to Case No. 50-249A: No error.
As to Case No. 50-249B: Reversed.

PARKER, C.J., concurs in result.