STATE OF NORTH CAROLINA v. EVERETT JENNING McKNIGHT

No. 99

(Filed 10 June 1971)

**1. Criminal Law § 106— motion for nonsuit — sufficiency of evidence — circumstantial evidence**

The test of the sufficiency of evidence to withstand a motion for nonsuit is the same whether the evidence is circumstantial, direct, or both.

2. **Homicide § 21— second degree murder — sufficiency of evidence**

   The State offered sufficient evidence to require that the issue of defendant's guilt of second degree murder be submitted to the jury, although some of the evidence introduced by the State might have been exculpatory.

3. **Criminal Law § 106— motion for nonsuit — where State's evidence is both exculpatory and inculpatory**

   When the substantive evidence offered by the State is conflicting— some tending to inculpate and some tending to exculpate the defendant—it is sufficient to overrule a motion for judgment as of nonsuit.

APPEAL by defendant from *Beal, S.J.,* September 23, 1970 Session of MECKLENBURG Superior Court.

Defendant was tried for the second degree murder of Claude Blalock Bridges. From a verdict of guilty of second degree murder and sentence imposed, defendant appealed to the Court of Appeals. The case comes here under our transferral order of July 31, 1970.

*Attorney General Robert Morgan and Assistant Attorney General Thomas B. Wood for the State.*

*E. Clayton Selvey, Jr., for defendant appellant.*

MOORE, Justice.

Defendant's only assignment of error is to the refusal of the court to allow his motions for nonsuit at the close of the State's evidence and at the close of all the evidence. The State's evidence tends to show:

Everett Parker had been an employee of Mecklenburg Bonding Company for nine years. His office was located at 122 S. Davidson Street in Charlotte. This office had two rooms, one directly behind the other. The back room had two beds in it. The deceased, Claude Blalock Bridges, sometimes called Bill Bridges, had been employed by Mecklenburg Bonding Company for two years. On 6 March 1970 between 9:30 and 9:40 p.m., Parker was in his office sitting directly in front of a plate glass window when he heard three successive shots fired. The shots sounded like they were close. Ten to fifteen seconds later Parker saw somebody pull himself up by the window sill and then enter his office. This person was so bloody that he did not recognize him at first; his entire body, face, and head were covered

with blood. When this person got inside, Parker saw that it was the deceased. The deceased did not stop but went straight to the back office and fell on a bed. Russell Adams, who was in the office with Parker, followed deceased into the back room. Approximately ten to fifteen seconds after deceased came in, defendant entered. He had a .32 caliber pistol in his left hand similar to one the deceased owned, and blood on his clothing and hands. As defendant came in, he said "Where did Bill go?" Parker, who was on the telephone calling for help, told defendant "back there" and motioned toward the back room. Defendant went into the back room. After defendant came in, Parker went outside and saw no one else except some firemen who were at a fire station across the street.

About 8 p.m. on 6 March 1970 Joe Stewart saw the defendant and the deceased at the Mecklenburg County jail getting into deceased's car. When he came back to his office at 118 S. Davidson Street, he noticed that deceased's car was parked at deceased's office at 114 S. Davidson Street. He was sitting at his desk in front of a picture window shortly after 9 p.m. when he heard three shots which sounded like they came from the left of him. He stood up and saw someone go by the window, after which he went outside, looked to his left and saw no one, looked to his right and saw Parker coming out of 122 S. Davidson Street. He then went to 122 S. Davidson Street and saw deceased lying on the floor bleeding; defendant, with blood on his face, hands and clothing, was kneeling beside deceased saying, "Bill, Bill, Bill," and then he said "is he dead" a number of times. Later, Stewart got into a police patrol car with the defendant, and defendant told him he was in the back room and deceased was in the front room of deceased's office at 114 S. Davidson Street, when the deceased came running into the back room, turned around, and ran out down the street. At the police station the defendant told Stewart that he was in the back room and deceased was in the front room; that he heard shots, ran to the front room, and saw a gun lying on the floor. At the trial Stewart testified that the story defendant told him at the police station was not the same story defendant told him earlier.

Russell Adams was at 122 S. Davidson Street on 6 March 1970. He knew both the deceased and the defendant. Between 9:30 and 9:40 p.m. he heard three shots, looked through the

State v. McKnight

plate glass window, and as the last shot was fired he saw deceased getting up at the corner of the building. Deceased stumbled through the door, went to the back room and fell across the bed; he had blood all over him. Defendant came running in about five seconds later with a gun in his hand and blood on his clothing and hands. Defendant said, "Where is he at?", and Adams said "in the back." Defendant then went straight to the back room, followed by Adams. Adams left for ten or fifteen seconds, returned, helped deceased off the bed, and laid him straight out on the floor. The defendant's pants had been torn. At the trial Adams testified that the pocket of defendant's pants was "flabby when he came in the front door like it was flunked down on one side." About a week after March 6, Adams found a bloody monkey wrench weighing about eight or nine pounds under a pile of clothes near the bed on which deceased was lying. Adams had often seen the wrench at deceased's place of business.

James C. Brown, an employee of the Charlotte Fire Department, on 6 March 1970 heard two gunshots at approximately 9:30 p.m. He got up immediately from his desk, looked out the window, and saw defendant on the sidewalk walking toward the Mecklenburg Bonding Company with a gun in his hand. He also saw some other person going in the same direction in front of defendant. Brown then went across the street to 122 S. Davidson Street where he saw deceased lying on the floor at the rear of the office, and defendant, with blood on his hands and face, standing beside deceased.

Francis Wade, a member of the Charlotte Fire Department, was in the south side of the Mecklenburg Bonding Company's parking lot on 6 March 1970 when he heard three shots. After he heard the shots he walked to the sidewalk and saw someone go into the Bonding Company's office. He walked into the office, saw deceased going into the back, and saw defendant coming down the street with a gun in his hand pointed out. He observed all this about ten seconds after he heard the last shot.

Officers W. E. Burnett and R. A. Metcalf, members of the Charlotte Police Department, went to 122 S. Davidson Street at approximately 9:45 p.m. on 6 March 1970 and found the deceased lying on the floor in the center section of the office. Defendant was there with blood on his shirt, hands, and left

side of his face. When they searched the defendant, they found a .32 caliber pistol belonging to the deceased in his left front pocket, and a .25 automatic in his right rear pants pocket.

On 6 March 1970, H. R. Smith, an officer with the Charlotte Police Department's Criminal Investigation Bureau, examined the .32 caliber pistol taken from the defendant. He found one live and three spent cartridges in the chamber, and two shells lying on the floor near the right foot of the bed at 122 S. Davidson Street. Smith searched defendant and found $487.98 loose in his pocket. About 10:05 p.m. that evening he went to the deceased's address at 114 S. Davidson Street and observed blood on the sheets, on the bedroom floor, on the floor in the middle room, and drops of blood leading from there out the door of the front room and onto the front porch. An examination for bullet holes was made in the rear of the house where the bedroom is located. One .32 caliber bullet was found in the back door. Later that evening, the defendant told Smith he went to deceased's office about 7 p.m. to watch a ball game; that somewhere near the end of the second ball game he got up and went to the bathroom, and that several seconds later he heard deceased say, "Mack, help. Mack, help"; that when he looked he saw deceased lying in his room on the bed; that he helped him off the bed, and then deceased broke loose from him and went out the front door; that he followed deceased out the front door and picked deceased's gun up from the porch; that deceased started down the street; that deceased then went into the office at 122 S. Davidson Street, after which defendant followed him and asked where deceased was; that he went to the back of the office and found deceased lying on the floor. Defendant also told Smith he had some personal contact with deceased at 114 S. Davidson Street and also at 122 S. Davidson Street.

Amon Butler owns the building at 114 S. Davidson Street where deceased lived. The wrench found at 122 S. Davidson Street was one which he used the latter part of January to fix the lavatory at 114 S. Davidson Street and had not seen since.

Hobart R. Wood, Medical Examiner for Mecklenburg County, performed the autopsy on the deceased. He found that the deceased had a massive blunt force type head injury; that he had a total of twenty-one deep, or relatively deep, lacerations over the forehead, left scalp, left ear, one in the back of the scalp and one in the back of the right side of his head; that he

had a fractured skull on the left side, which extended into the base of the skull; that he had an acute hemorrhage of the brain, acute swelling of the brain as a result of the injuries; that deceased had been shot once through the body, entering the left back area, and had been stabbed twice; that deceased died as the result of massive head injuries and a gunshot wound through the left lung.

On 4 April 1970 Officer C. J. Miller of the Charlotte Police Department was examining the patrol car which Officers Burnett and Metcalf used to carry the defendant to the police station on March 6. He slid the back seat out and found deceased's wallet underneath. The wallet contained no paper money.

Defendant offered no evidence.

[1] The State's evidence is circumstantial. The test of the sufficiency to withstand a motion for nonsuit, however, is the same whether the evidence is circumstantial, direct, or both. *State v. Hill,* 272 N.C. 439, 158 S.E. 2d 329; *State v. Bogan,* 266 N.C. 99, 145 S.E. 2d 374; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431. As said by Justice Higgins in *State v. Stephens, supra,* quoting from *State v. Johnson,* 199 N.C. 429, 154 S.E. 730: " 'If there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.' The above is another way of saying there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss. It is immaterial whether the substantial evidence is circumstantial or direct, or both." Accord, *State v. Riera,* 276 N.C. 361, 172 S.E. 2d 535; *State v. Wright,* 275 N.C. 242, 166 S.E. 2d 681; *State v. Pinyatello,* 272 N.C. 312, 158 S.E. 2d 596.

[2] Defendant contends, however, that the State in introducing its evidence brought out certain statements made by defendant to the effect that deceased was attacked by unknown third parties during the period that defendant was in an adjoining bathroom, and that after the assault deceased brushed against defendant and rushed into a nearby building where he died. Defendant's statements further tended to show that deceased dropped the gun, which defendant picked up and carried with him to the deceased's office. Defendant contends that under *State*

*v. Carter,* 254 N.C. 475, 119 S.E. 2d 461, these exculpatory statements should result in a dismissal of the action at the conclusion of the evidence. Defendant also cites *State v. Johnson,* 261 N.C. 727, 136 S.E. 2d 84, and *State v. Gaines,* 260 N.C. 228, 132 S.E. 2d 485, as supporting his position. An examination of these cases shows factual situations entirely different from the present case. The exculpatory statements in those cases were not contradicted by other evidence.

In *State v. Carter, supra,* the State introduced as witnesses the mother and daughter of the deceased and the testimony of the investigating sheriff. The undisputed and entirely consistent testimony of these persons was all to the effect that the daughter killed the father in defense of her mother who was then being brutally attacked. No other inculpating evidence was tendered by the State. Since there was a complete lack of other substantial evidence of defendant's guilt for the jury to consider, nonsuit was properly granted.

In *State v. Gaines, supra,* the evidence presented by the State was all to the effect that the persons accompanying the actual perpetrator of the crime did not know of his intention to commit a criminal act. And in *State v. Johnson, supra,* there was a complete absence of evidence other than that introduced showing self-defense.

In the present case there is abundant evidence showing the facts to be different from defendant's statements. The State's evidence conclusively proves (1) that the deceased was brutally beaten, stabbed, and shot in the back, and that the direct cause of death was the gunshot wound; (2) that shots were heard out on the street, and the deceased was seen entering 122 S. Davidson Street closely followed by defendant with a drawn gun; (3) that deceased died in the back room at 122 S. Davidson Street; (4) that a trail of blood led from 122 S. Davidson Street to 114 S. Davidson Street where deceased and defendant had been together earlier watching television; (5) that deceased and defendant were each covered in blood when they entered the office at 122 S. Davidson Street; (6) that a .32 caliber bullet was found embedded in the wall at 114 S. Davidson Street which would fit the .32 caliber pistol of the deceased being carried by defendant; (7) that a wrench covered in blood was discovered near the spot where defendant had been standing at 122 S. Davidson Street; (8) that when defend-

ant entered the office at 122 S. Davidson Street where the wrench was later found "his pocket was flabby when he came in the front door like it was flunked down on one side. I saw his pants were all flunked down in the back"; (9) that a number of witnesses saw deceased and defendant walking toward 122 S. Davidson Street immediately after the shots were fired; defendant was behind and had the pistol pointed at deceased; no other person was seen in the vicinity at that time; and (10) that defendant had the sum of $487.98 in cash loose in his pocket, and the billfold of deceased containing no paper money was later found under the back seat in the patrol car in which defendant was taken to jail. These facts conflict in many respects with defendant's statements. In fact, the defendant's statements, as related by Joe Stewart, were conflicting themselves.

[3]  *State v. Horton,* 275 N.C. 651, 658, 170 S.E. 2d 466, 471, states: " . . . [W]hen the substantive evidence offered by the State is conflicting—some tending to inculpate and some tending to exculpate the defendant—it is sufficient to overrule a motion for judgment as of nonsuit. *State v. Mitchum,* 258 N.C. 337, 128 S.E. 2d 665; *State v. Bass,* 255 N.C. 42, 120 S.E. 2d 580; *State v. Mangum,* 245 N.C. 323, 96 S.E. 2d 39; *State v. Tolbert,* 240 N.C. 445, 82 S.E. 2d 201."

[2]  Considering the evidence in the light most favorable to the State, as we are required to do, we think the combination of facts here disclosed constitutes substantial evidence of defendant's guilt and not merely suspicious circumstances. It was for the jury to say whether the evidence established defendant's guilt beyond a reasonable doubt.

As stated by Justice Lake in *State v. Hill, supra,* at p. 444:

" . . . To survive the motion for nonsuit, it is not necessary that the Court be of the opinion that the evidence is sufficient to establish each element of the offense beyond a reasonable doubt. It is enough that there is substantial evidence of each element of the offense. If so, the issue must be submitted to the jury, and it is a question for the jury whether the evidence establishes each element of the crime beyond a reasonable doubt. . . . When the evidence relied upon to establish an element of the offense charged is circumstantial, the court must charge the jury that it

Town of Hudson v. City of Lenoir

must return a verdict of not guilty unless the evidence points unerringly to the defendant's guilt and excludes every other reasonable hypothesis. . . . It is not necessary, however, that the judge must so appraise the evidence in order to overrule the motion for judgment of nonsuit."

In a charge free from error, the trial judge instructed the jury that it should first determine what circumstances the evidence established beyond a reasonable doubt, and by considering only those facts thus established it would determine whether they were of such a nature and so related as to point unerringly to defendant's guilt and to exclude every rational hypothesis of innocence. Presumably, the jury followed these instructions. The verdict will not be disturbed.

No error.