IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-478

Filed 18 February 2026

Iredell County, Nos. 23 CR 393990-480, 23 CR 001296-480

STATE OF NORTH CAROLINA

v.

SCOTTIE DEWAYNE DAVIDSON, Defendant.

Appeal by Defendant from judgment entered 21 August 2024 by Judge Joseph N. Crosswhite in Iredell County Superior Court. Heard in the Court of Appeals 20 November 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Alex R. Williams, for the State.*

> *King & Moss PLLC, by John W. Moss, for Defendant–Appellant.*

MURRY, Judge.

Scottie D. Davidson (Defendant) is a registered sex offender. He appeals a jury conviction of willfully failing to report a change of address within three days of moving from his registered address under N.C.G.S. § 14-208.11(a)(2) (WFR-Address). Defendant argues that the trial court erred by failing to define the term *willfully* in response to the jury's question during deliberation, and that the trial court plainly erred by instructing the jury that the WFR-Address offense "d[id] not require a specific intent and therefore [D]efendant's intoxication ha[d] no bearing on [his] guilt or innocence." For the following reasons, we dismiss Defendant's appeal as to his first

assignment of error and hold no plain error as to his second.

## I.   Background

In 2015, a jury convicted Defendant of second-degree rape, a reportable sex offense under N.C.G.S. § 14-27.3(a) (recodified as N.C.G.S. § 14-27.22), in Iredell County Superior Court. *See* N.C.G.S. § 14-208.6(4)–(5) (2025) (establishing second-degree rape under N.C.G.S. § 14-27.22 as sexually violent offense and reportable conviction). The trial court sentenced him to 67–141 months' imprisonment and required him to register as a sex offender upon his release. As part of his registration, Defendant reviewed and initialed an Offender Acknowledgement Form, which required him to "report the address or a detailed description of every location where [he] reside[d] or live[d,] . . . even if it d[id] not have a street address," within three business days of relocating.

In April 2023, Defendant updated his address as required when he moved into his grandmother's home at 116 Thyme Lane in Statesville, N.C. (the home). On 16 August 2023, Deputy Brad Stroud conducted a compliance visit at the home, but Defendant was not there. Defendant's uncle informed Deputy Stroud that Defendant had not "live[d] there" since around July 2023. Upon learning from Defendant's probation officer that Defendant wore an ankle monitor for satellite-based monitoring (SBM) purposes, Deputy Stroud obtained Defendant's SBM location data. The SBM data showed that, between 30 June and 24 August 2023, Defendant spent less than two hours at the home, moving among locations in and around Statesville. On 27

August 2023, officers arrested Defendant and charged him with WFR-Address.

On 6 December 2023, a grand jury indicted Defendant for WFR-Address and for obtaining habitual-felon status. Prior to trial, Defendant stipulated to his conviction for a reportable sex offense and his duty to comply with the sex-offender registration statute. At trial on 19 August 2024, the State introduced Defendant's sex-offender registration documents, which included including the signed Offender Acknowledgement Form; Deputy Stroud's testimony; the uncle's written and oral statements; and Defendant's SBM data. Defendant's uncle testified that Defendant left the home after arguing with his grandmother, but that both Defendant and his grandmother considered the home to be Defendant's residence. The State's SBM data showed Defendant's absence from the home between 30 June and 24 August 2023 other than for a short amount of time between 5 and 6 July 2023. Defendant's grandmother testified that she told him to leave the home after he became "disrespectful" and "unruly" during their argument. She believed that he "never moved out," as his clothes and other personal items remained in his room at the home. Defendant also testified that he believed the home to be his residence. Around the time the SBM data showed his absence from the home, Defendant testified that he had begun using cocaine and fentanyl, spending his days "just getting high," moving among various locations in Statesville "for free drugs," and losing track of time such that the six-week period felt like "three or four days."

At the close of evidence, the trial court instructed the jury using North Carolina

Pattern Jury Instruction 207.75, which discusses willful failure to comply with the sex-offender registration law. *See* N.C.P.I.—Crim. 100.35. The trial court explained that it was the State's burden to prove that Defendant "willfully failed" to report a change of address "no later than three business days after the change of address." Defense counsel did not object or request any additional instructions. When the trial court then directly asked defense counsel whether he desired any "corrections, comments, [or] concerns to the instructions," he replied, "No, sir."

During deliberations, the jury asked the trial court: "How does *willfully* relate to being under the influence of drugs[?]" (Italicization added.) In response, the State requested that the trial court give the jury either an additional instruction on voluntary intoxication according to N.C.P.I.—Crim. 305.10 or explain that "voluntary intoxication is no defense to a general[-]intent crime." Defense counsel objected to this instruction "in the strongest possible terms." He argued that "[i]ntoxication was not offered as [a] defense," that the "defense was . . . willfulness," "that [Defendant] did not move and did not change his address," that a voluntary-intoxication instruction "would confuse the issue" and "severely prejudice" Defendant "at worst." Instead, he asked the trial court to "remind the jury what the instructions [were] and instruct them to deliberate and come to a decision between themselves." Defense counsel explained that he could "understand" "if the Court wanted to instruct the [jury] on the definition of willfulness" and asked the trial court to define it "as an answer to the jury's question." The trial court asked defense counsel to submit his preferred

definition of *willfulness*, to which he replied, "I'm looking and the one I found so far is from a civil[-]contempt proceeding. I'm not sure that it is necessarily applicable . . . . I don't think that will work for us."

The trial court decided to answer the jury's question with a supplemental voluntary-intoxication instruction in accordance with N.C.P.I.—Crim. 305.10. The State asked the trial court to remove the second and fourth paragraphs of N.C.P.I.—Crim. 305.10 because they apply only to specific-intent crimes, arguing that WFR-Address is a general-intent crime. Defendant's counsel agreed, explicitly conceding that WFR-Address was not a specific-intent crime and explaining that, although he maintained his objection to reading N.C.P.I.—Crim. 305.10, should the trial court read the voluntary-intoxication instruction, paragraphs "one and three would be the appropriate paragraphs to read." The trial court then read the proposed instructions "word for word" for the parties. Defense counsel, citing his previous objection, agreed to the trial court's removal of paragraphs two and four.

Ultimately, the trial court answered the jury's question with the following instruction:

> You may find there is evidence which tends to show that [D]efendant was drugged at the time of the acts alleged in this case. Generally, a voluntary drugged condition is not a legal excuse for crime. The law does not require any specific intent for [D]efendant to be guilty of the crime of failing to register a new address as a sex offender not requiring specific intent. Thus[, D]efendant's drugged condition can have no bearing upon your determination of [D]efendant's guilt or innocence of this crime.

The trial court did not define *willfully*.

On 21 August 2024, the jury found Defendant guilty of WFR-Address and attaining habitual-felon status. The trial court deemed Defendant to be a prior-record level III and sentenced him to 78–106 months' imprisonment with 361 days of pretrial-confinement credit. The trial court also recommended substance-abuse and mental-health treatments, then entered attorney's fees as a civil judgment. Defendant timely appealed.

## II.    Jurisdiction

This Court has jurisdiction over Defendant's appeal of the trial court's final judgment under N.C.G.S. §§ 7A-27, 15A-1444. *See* N.C.G.S. § 7A-27(b) (final judgment of trial court); *id*. § 15A-1444(a) (pleaded not guilty but found guilty).

## III.    Analysis

Defendant argues that the trial court erred by failing to define the term *willfully* in response to the jury's question during deliberation, and that it plainly erred by instructing the jury that WFR-Address "does not require a specific intent and therefore [D]efendant's intoxication has no bearing on [his] guilt or innocence." For the following reasons, we dismiss Defendant's first assignment of error and hold no plain error as to his second.

### A. Defining *Willfully*

First, Defendant argues the trial court erred by failing to define the term *willfully* in response to the jury's question. As a threshold matter, we consider

whether Defendant properly preserved this argument for review. *See* N.C. R. App. P. 10(a)(1). Because Defendant neither objected at trial nor sought plain-error review on appeal, he has waived further review of this issue. We dismiss it accordingly. *See id.* 10(a)(4).

## B. Voluntary-Intoxication Instruction

Second, Defendant argues that the trial court plainly erred by instructing the jury that WFR-Address does "not require a specific intent and therefore [D]efendant's intoxication ha[d] no bearing on [his] guilt or innocence." He also believes that the trial court plainly erred by instructing the jury that Defendant's intoxication was irrelevant because WFR-Address does not require any specific-intent. For the following reasons, we hold that the trial court did not plainly err.

Plain error is a "fundamental error . . . so prejudicial[ and] lacking in its elements that justice cannot have been done." *State v. Odom*, 307 N.C. 655, 660 (1983) (quotation omitted). Under plain-error review, "a defendant must demonstrate that a fundamental error occurred at trial" by showing that (1) "the trial court fundamentally erred"; (2) "the jury probably would have returned a different verdict" "absent the error"; and (3) the error "seriously affect[ed] 'the fairness, integrity or public reputation of judicial proceedings.'" *State v. Reber*, 386 N.C. 153, 150 (2024) (quoting *State v. Lawrence*, 365 N.C. 506, 518–19 (2012)). To show fundamental error, a defendant must establish prejudice—that, after examination of the entire record, "the error had a probable impact on the jury's finding that the defendant was guilty."

*Lawrence*, 365 N.C. at 518.

North Carolina law states that, "[i]f a person required to register changes address, the person shall report in person and provide written notice of the new address." N.C.G.S. § 14-208.9(a) (2025). Defendant was charged with violating N.C.G.S. § 14-208.11(a)(2), a Class F felony that criminalizes a registered sex offender's "willful[ ] fail[ure] to notify the last registering sheriff of a change of address." N.C.G.S. § 14-208.11(a)(2). Because the voluntary-intoxication defense applies only to specific-intent crimes, Defendant's contention of plain error posits that WFR-Address is a specific-intent crime. *See State v. Jones,* 300 N.C. 363, 365 (1980). Given the facts of this case and the contradictory caselaw, the more precise issue before this Court is whether the trial court should have instructed the jury on § 14-208's meaning of *willfully* and its implication of specific intent.[1] Accordingly, we first address whether N.C.G.S. § 14-208.11(a)(2) requires proof of specific intent before addressing whether the trial court committed plain error.

### 1. Sections 14-208.11, -269.2

Except as limited by the State and Federal Consitutions, the General Assembly has the inherent power to "define crimes and ordain their punishment." *State v. Hill*, 272 N.C. 439, 443 (1968) (quotation omitted); *see* N.C. Const. art. II, § 1 ("The

---

[1]    Our Court interpreted N.C.G.S. § 14-208.11(a)(2) before it was amended to include the word *willfully* in 2006. Since then, our caselaw is unclear as to the criminal-intent requirement under N.C.G.S. § 14-208.11(a)(2).

legislative power of the State shall be vested in the General Assembly."). This power includes the ability to impose certain intent or *mens rea* requirements. *See State v. French*, 273 N.C. App. 601, 606 (2020) (The General Assembly can require the State to prove a defendant's "specific intent," such as *willfulness*, when committing an offense.). Generally, "[s]pecific-intent crimes . . . have as an essential element a specific intent that a result be reached," while "[g]eneral-intent crimes . . . only require the doing of some act." *State v. Jones*, 339 N.C. 114, 148 (1994). *Mens rea* refers to "[t]he state of mind that the prosecution . . . must prove that a defendant had when committing a crime." *Mens Rea, Black's Law Dictionary* (12th ed. 2024).

This Court "determines whether a particular criminal offense constitutes a general or specific intent crime by examining the elements which must be proved . . . to support a conviction for committing that offense." *State v. Barnes*, 229 N.C. App. 556, 560 (2013). The question of "[w]hether a criminal intent is a necessary element of a statutory offense is a matter of construction" determined "from the language of the statute in view of its manifest purpose and design." *State v. Watterson*, 198 N.C. App. 500, 505 (2009). Accordingly, "[w]e first look to the plain language, as the actual words of the legislature are the clearest manifestation of its intent." *Cohane v. Home Missioners of Am.*, 387 N.C. 1, 7–8 (2025) (quotation omitted). "When the language of a statute is clear and unambiguous, there is no[ ] room for judicial construction and the courts must give the statute its plain and definite meaning." *Hill*, 291 N.C. App. at 638 (quotation omitted). Generally, statutory language requiring "that a defendant

act 'willfully' creates a specific intent crime." *French*, 273 N.C. App. at 606.

Because this Court follows a statute's plain language, we will not infer a criminal-intent requirement where the statute omits it. For instance, we declined to read a specific-intent element into a statute where the "plain terms . . . d[id] not include any reference to criminal intent or *mens rea.*" *State v. Haskins,* 160 N.C. App. 349, 352 (2003), *superseded by statute on other grounds*, Act of June 17, 2011, S.L. 2011-268, sec. 4, 2011 N.C. Sess. Laws 1002, 1005; *see* N.C.G.S. § 14-269.2(b). But after the General Assembly amended § 14-269.2 to include the word *knowingly*, sec. 4, 2011 N.C. Sess. Laws at 1003–04, this Court "acknowledged the amendment and recognized the added *mens rea* requirement" as that of specific intent. *French*, 273 N.C. App. at 606.

Like § 14-269.2, the WFR-Address statute reveals a similar legislative pattern of abrogating specific-intent requirements with a specified *mens rea*. In 1995, the General Assembly enacted the "Amy Jackson Law," which had previously provided that a person who was required to register as a sex-offender in accordance with Article 27A and failed to do so "knowingly and with the intent to violate the provisions of this Article" would be guilty of certain classes of offenses. Amy Jackson Law, ch. 545, sec. 1, 1995 Sess. Laws 2046, 2049 (codified as amended at N.C.G.S. § 14-208.11). But in 1997, the General Assembly amended this statute to remove the *mens rea* language. Act of Aug. 28, 1997, ch. 516, sec. 1, 1997 N.C. Sess. Laws 2276, 2282.

Since that amendment, this Court has consistently held that N.C.G.S.

§ 14-208.11 no longer requires proof of specific intent. In *State v. White*, 162 N.C. App. 183, 189 (2004) (brackets omitted), this Court noted that, "by deleting the specific-intent requirement, the General Assembly expressed its intent to make N.C.G.S. § 14-208.11 a strict-liability offense" and held "as a matter of statutory construction, that N.C.G.S. § 14-208.11 did not require a showing of knowledge or intent." Likewise, in *State v. Harris*, 171 N.C. App. 127, 131 (2005),[2] this Court held that a defendant was not entitled to a voluntary-intoxication defense because N.C.G.S. § 14-208.11 "no longer include[d] a specific intent element."

Our subsequent decisions followed the same reasoning that a conviction under § 14-208.11 requires no specific intent. *See, e.g.*, *State v. Holmes*, 149 N.C. App. 572, 577 (2002) (excluding specific intent from recitation of § 14-208.11(a)(2)'s essential elements); *State v. Young*, 140 N.C. App. 1, 8 (2000) (clarifying that § 14-208.11 does not require "the State [to] prove either defendant knew he was in violation of or intended to violate the statute when he failed to register his change of address."). But our courts based these decisions on the "1997 amendment . . . deleting the statutory *mens rea* requirement." *State v. Bryant*, 359 N.C. 554, 562 (2005).

In 2006, the General Assembly amended N.C.G.S. § 14-208.11(a) to provide that a person who was required to comply with the requirements of Article 27A and

---

[2]   At trial, the State submitted *State v. Harris*, 171 N.C. App. 127, 131 (2005) in support of its argument that WFR-Address is a general-intent crime. To the extent that the trial court relied on this decision or any others interpreting outdated versions of state law, it did so erroneously.

"willfully" failed to do so on or after 1 December 2006 would be guilty of a Class F felony. Act of July 27, 2006, S.L. 2006-247, sec. 8, § 14-208.11(a), 2005 N.C. Sess. Laws 1065, 1070–71. In doing so, the General Assembly "re-introduced intent-based language into the provision, effectively reviving the original *mens rea* requirement that had first been removed by the 1997 amendment and had rendered a violation of the statute a strict[-]liability offense." *State v. Fox*, 216 N.C. App. 153, 156 (2011).

### 2. Section 14-208.9

At this point, we recognize that those cases interpreting the pre-2006 version of N.C.G.S. § 14-208.11 are obsolete to the extent they rely on a superseded statute. Although Defendant was convicted of violating N.C.G.S. § 14-208.11, because this offense "deals with the same subject matter" as N.C.G.S. § 14-208.9, we must construe the statutes "*in pari materia* to give effect to each." *Holmes*, 149 N.C. App. at 766. When a sex offender "changes address," he must "report in person and provide written notice of the new address not later than the third business day after the change to the sheriff of the county with whom the person had last registered." N.C.G.S. § 14-208.9(a). If he "willfully . . . [f]ails to notify the last registering sheriff of a change of address as required by this Article," then he is guilty of a Class F felony. *Id.* § 14-208.11(a)(2).

When used in a criminal statute, *willful* "means something more than an intention to do a thing," *State v. Dickens*, 215 N.C. 303, 305 (1939); it requires an act "purposely and deliberately in violation of law," *State v. Ramos*, 363 N.C. 352, 355

(2009). By adding *willfully* to subsection (a), the 2006 amendment "increased the required level of intent" to "criminalize[ ]" "only 'willful' registration violations." *State v. Lamp*, 383 N.C. 562, 571 (2022). In other words, the WFR-Address statute requires the State to prove three essential elements: "(1) the defendant is required to register; (2) the defendant changes his or her address; and (3) the defendant willfully fails to notify the last registering sheriff of the change of address, not later than the third day after the change." *State v. Abshire*, 363 N.C. 322, 328 (2009) (citation modified). The General Assembly's deliberate addition of *willfully* makes WFR-Address a specific-intent crime. *See id.* (noting that "heightened level of intent required by statute is no accident"); *French*, 273 N.C. App. at 606 (crimes with "willfulness" element require a showing of specific intent).

Accordingly, a jury must consider whether the defendant *willfully* violated N.C.G.S. § 14-208.11. *See* N.C.G.S. § 14-208.11. More specifically, the State must show that a defendant *willfully* failed to provide written notice of a change of address within three business days. As a result, we hold that the trial court erred by instructing the jury that the crime of willful failure to change address does "not require a specific intent and therefore [D]efendant's intoxication ha[d] no bearing on [his] guilt or innocence." *See State v. Howie*, 116 N.C. App. 609, 613 (1999) ("Voluntary intoxication may negate the existence of specific intent as an essential element of a crime.").

### 3. Prejudice

In any event, the trial court's error does not rise to plain error unless Defendant can show that "the jury probably would have returned a different verdict" absent the error. *Reber*, 386 N.C. at 162. Voluntary intoxication *may* provide a defense against specific-intent crimes. *See State v. Bunn*, 283 N.C. 444, 458 (1973). But a defendant is not entitled to a voluntary-intoxication instruction every time he "consum[es] intoxicating beverages or controlled substances." *State v. Baldwin*, 330 N.C. 446, 462 (1992). To obtain a voluntary-intoxication instruction, a defendant "must show that at the time of the [crime,] the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming" the specific intent required. *State v. Meader*, 377 N.C. 157, 162 (2021) (quotations omitted). Our appellate courts have consistently held that "it must appear that [the] defendant was not able, by reason of drunkenness, to think out beforehand what he intended to do and to weigh it and understand the nature and consequence of his act." *Bunn*, 283 N.C. at 457 (quotations omitted).

Because WFR-Address is a specific-intent crime requiring the State to show "willfulness," Defendant could have obtained a voluntary-intoxication instruction by producing "substantial evidence" "that he was so intoxicated that he could not" have willfully failed to update his address. *Meader*, 337 N.C. at 162. He did not do this. Defense counsel repeatedly declined to raise voluntary intoxication as a defense, asserting instead the defense of "willfulness and . . . that [Defendant] did not move and did not change his address[,] . . . not intoxication." Because Defendant expressly

rejected intoxication as a ground for negating intent, the trial court's instruction explaining the unavailability of voluntary intoxication as a defense could not have prejudiced Defendant.

The State also offered sufficient evidence to allow the jury to reasonably conclude that Defendant's failure to update his registered address was willful. The State's evidence tended to show that Defendant had explicit knowledge of his reporting obligations based on his review and initialing of the Offender Acknowledgment Form. Defendant also successfully updated his address in April 2023, indicating his knowledge of the requirement to do so. The SBM data demonstrated that he spent approximately six weeks away from the home while remaining capable of movement and communication. Despite this, Defendant failed to report any new address or claim homelessness. *See State v. Worley*, 198 N.C. App. 329, 338 (2009) ("[T]he sex[-]offender registration statutes operate on the premise that everyone does, at all times, have an 'address' of some sort, even if it is a homeless shelter, a location under a bridge[,] or some similar place."). Taken cumulatively, the evidence supports the conclusion that Defendant "purposely and deliberately" failed to comply with the statutory reporting requirement of reporting his change of address. *Ramos*, 363 N.C. at 355.

Based on the State's evidence of Defendant's guilt, Defendant fails to show that "the jury probably would have returned a different verdict" absent the challenged portions of the voluntary-intoxication instruction. *Reber*, 386 N.C. at 162. Even if

Defendant had offered the proper evidence to obtain a voluntary-intoxication defense, it is implausible that Defendant's alleged intoxication persisted without interruption for over three months, twenty-four hours a day, seven days a week, to have rendered him unable "to formulate the specific intent" of willfulness. N.C.P.I.—Crim. 305.10. Therefore, Defendant fails to show the probability of a different jury verdict absent the trial court's error in giving the supplemental instruction. *See Reber*, 386 N.C. at 162.

## IV.   Conclusion

For the reasons discussed above, this Court dismisses Defendant's challenge to the trial court's failure to define *willfully* as unpreserved and holds that the trial court did not plainly err in its supplemental instructions regarding the offense and the relevance of Defendant's intoxication.


DISMISSED IN PART; NO PLAIN ERROR IN PART.

Judges GRIFFIN and FREEMAN concur.